## STREET RAILWAY FRANCHISES GRANTED PRIOR TO THE ACT OF 1878.

[Circuit Court of Franklin County].

STATE EX REL TAYLOR, V. THE COLUMBUS RAILWAY COMPANY.

Decided, June 25, 1903.

*Street Railways—Franchise—Grant of, Prior to the Act of 1878—Consent of City to Its Exercise—Revokable Only by Legislative Authority—A Consent to a Term of Twenty-five Years Prospective in Its Operation.*

1. The right to construct and operate a street railway in streets of a city, prior to the act of May 14; 1878 (75 O. L., 359), was a franchise or privilege granted by the state upon condition that the city consent to its exercise.
2. Such consent given prior to said act without limitation of time or to a corporation with succession during the term of its charter is revokable only by legislative authority.
3. A franchise or privilege to construct and operate a street railway granted and consented to prior to said act without limitation of time is perpetual, but subject to be determined by the General Assembly under Section 2 of Article I, or under Sections 1 and 2 of Article XIII of the Constitution.
4. The limitation in said act of the consent to the term of twenty-five years was prospective in its operation, and not the exercise by the General Assembly of any of the powers reserved to it by said sections of the Constitution.

SUMMERS, J.; SULLIVAN, J., and WILSON, J., concur.

The petition is as follows:

"The State of Ohio on relation of Edward L. Taylor, Jr., who is the duly elected, qualified and acting Prosecuting Attorney of Franklin County, Ohio, says and makes known to the court that the defendant, the Columbus Railway Company, a corporation incorporated and organized under the laws of Ohio, and doing business in he city of Columbus, a municipal corporation of the first grade of the second class in said state, claims and exercises in said city the following franchises, privileges and rights in contravention of law, and misuses its corporate authority, franchises and privileges and assumes franchises and privileges not granted to it, in the following particulars, to-wit:.

"(1). To perpetually occupy the following streets and avenues in said city (mentioning them) ; for the purpose of maintaining and operating tracks and lines of street railway, with all the necessary switches, connections, turnouts and other appliances suitable and proper for their use, and for operating street railway cars on said tracks and lines, switches, connections and turnouts, and for maintaining and operating poles, trolley wires and other fixtures, plants, appliances and apparatus necessary for a street railway; and

"(2). To lay, construct and to perpetually maintain and operate in and on said streets and avenues hereinbefore described, street railway tracks with all necessary switches, turnouts and other appliances suitable and proper for their use; to erect, construct and perpetually maintain poles in said streets and avenues for the attachment of electric trolley wires; and to perpetually run and operate street cars along the tracks, switches, turnouts and connections on said streets and avenues; and to perpetually use said streets and avenues for furnishing electric power to run said cars thereon.

"Wherefore, said plaintiff prays that said defendent be ousted and altogether excluded from claiming or exercising the franchises, privileges and rights aforesaid; that such orders and relief may be granted to the plaintiff in the premises as shall seem to the court to be fit and proper; and that the relator recover his costs herein."

The answer sets up five defenses:

"1. Various grants of rights, franchises and easements made by the state, by the city of Columbus and by the Board of County Commissioners of Franklin County, Ohio, the acceptance of these grants by the companies to which they were made, the construction, maintenance and operation of the various lines of street railroad so authorized, the successive assignments of the rights, franchises and easements so granted and their acquisition by the defendant, the discharge by the several companies, including the defendant, of all of the duties and obligations so imposed, the exercise by the defendant of the rights and franchises, and its use of the easements, so created, and its right to continue their exercise, use and enjoyment.

"2. The defense of estoppel, based on the corporate franchises granted by the state and accepted and exercised by the companies, and on the acts of the state, and its agents, the board of public works, the city of Columbus, and the Board of County Commissioners of Franklin County, in making the grants in question without limitation as to the time of their duration. in reliance upon which

the defendant, and its predecessors in right, title and interest, expended large sums, and incurred a large bonded indebtedness which is unpaid and is secured by mortgages upon the lines of road in question and upon other lines of road owned by the defendant, and, prior to its acquisition thereof, by its predecessors in interest.

"3. That the defendant's use of the streets and avenues in question is not a matter or question of interest or concern to the state, which can be inquired into by proceedings in quo warranto; that the public rights are not impaired by such use; and that on the contrary, the existence, maintenance and operation of said lines of street railroad are of great benefit to the inhabitants of said city and its suburbs.

"4. That by reason of the construction of said lines a street railroad and their maintenance and continuous operation by their successive owners, including the defendant, under the grants made to them respectively, for more than twenty-one years, with the acquiescence of the state, and of the city of Columbus, and of said board of county commissioners, and the defendant's acquisition thereof as aforesaid, the defendant and its predecessors in interest acquired the right to exercise and use the franchise and easements in question.

"5. That the plaintiff"'s supposed cause of action is barred by the statute of limitations."

The plaintiff replies in substance that:

"1. By the grants in question neither the defendant, nor its predecessors in interest, acquired said franchises or easements in perpetuity, because:

"*a.* By their terms the grants were not made in perpetuity.

"*b.* Neither the state, nor the city, nor the board of county commissioners was authorized to make, nor were the companies empowered to accept, franchises or easements in perpetuity, and therefore,

"*c.* If the grants were intended to be, and by their terms were, made in perpetuity, they were void.

"2. If the Glenwood and Greenlawn Street Railway Company acquired franchises and easements in perpetuity on the West Broad Street route and its branch, and the State and Oak Street Railway Company acquired such rights in the State and Oak Street route, those rights, franchises and easements were lost by amendatory ordinances of the city passed respectively on the 14th day of April, 1879, and the 13th day of March, 1882.

"3. If the East Park Place Street Railroad Company and the Friend Street Railroad Company acquired rights, franchises, and easements in perpetuity in the Long Street route and its branch, and the Friend (now Main) Street route, said rights, franchises and easements were lost by the consolidation of those companies with the Columbus Street Railway Company, in the year 1879, under the act passed April 10, 1861 (58 Ohio Laws, 66; S. & S., 134).

"4. If the grants in question were made in perpetuity, the rights of the companies thereunder to exercise the franchises and easements thereby granted according to the terms of said grants were lost by the passage and acceptance of various ordinances authorizing the use of electricity as a motive power and the extensions of the routes described."

The case is submitted upon the pleadings and an agreed statement of facts. In the agreed statement of facts, the following agreements are found:

"Each and all of the ordinances of the city of Columbus, Ohio, mentioned in the defendant's answer herein, and all of the rights, franchises, privileges and easements therein and thereby granted to said several street railroad companies mentioned in said answer were in due form of law accepted and acted upon by them respectively as stated in said answer; and said ordinances became, and were at all times, and still are, valid and binding contracts between said city and said street railroad companies respectively, unless the same were in excess of the powers vested by law in said city, or were or are by law void, or have expired; but the plaintiff does not admit that valid contracts were thereby made.

"If the law permitted the granting of perpetual franchises on the streets mentioned in the petition, the terms for which said rights, privileges and easements mentioned in the answer herein were granted by the state of Ohio and by the city of Columbus, Ohio, and accepted by said several corporations respectively mentioned in the pleadings herein, and the contracts thereby made have not, nor has either of them, expired, and each of them still remains in full force and effect as stated in the defendant's answer herein, unless the same were in excess of the powers vested by law in the state of Ohio and in said city or either of them, or were or are by law void; but the plaintiff does not admit that the franchises granted to the Friend Street Railroad Company on Friend street by the State Board of Public Works was to extend longer than a period of twenty years, from the 9th day of May, 1868."

This seems to be an agreement that perpetual franchises in these streets other than Friend street were granted if it was in the power of the state to make or authorize a grant of such franchises, and to raise only the question of the existence of the power.

The contentions of counsel are chiefly upon this question, but other questions of law are raised, and if raised by the pleadings and agreed statement of facts, they are not eliminated by this agreement, for, when the facts are agreed upon, it is the province of the court to determine the law.

It appears that the franchises in question were granted after the passage of the first street railway act in 1861 and before the passage of the act of 1873, limiting to twenty-five years the grant of permission to use a street, and that the ordinances are silent as to time or provide that they shall continue in force "during the term of the charter of said (grantee) company."

The principal points of the contention on the part of the relator are indicated by the above statements of the reply and may be further summarized as follows:

First. That the grant "during the term of the charter" gave an easement for the life of the company only and that the life of the company ended when the company was consolidated with other companies or was merged into another company.

Second. That the other ordinances being silent as to time grant an easement for a reasonable time only; that power to grant a perpetual easement can be conferred upon a municipality only in express terms; that it has not been so conferred, and that the Legislature can neither grant a perpetual franchise nor delegate power to grant such a franchise, and if the grants purport to confer a perpetual franchise they are void.

The contention upon the part of the defendant is:

"(1). Prior to May 14, 1878, it was competent for the state, either directly, or through the State Board of Public Works, or the city of Columbus, or boards of county commissioners to grant to street railroad companies, and to empower them to exercise, the right to construct, maintain and operate street railroads in streets and public highways, without limiting the term or duration of the grants, the same being determinable only by the contingency

of the possible exercise of the Legislature of the power of revocation, or by the courts of the power of forfeiture.

"(2). The duration or term of grants in question is co-extensive in point of time with the corporate franchise of the companies to which the grants were made.

"(3). The consolidation of the Columbus Street Railway Company, the Friend Street Railroad Company, and the East Park Place Street Railroad Company into the Columbus Consolidated Street Railroad Company, did not extinguish or abrogate nor in any wise limit or effect the duration of the franchise, or privileges, or grants of the said three corporations, parties to the statutory agreement of consolidation.

"(4). The rights, franchises and easements acquired by the original companies were not revoked or impaired by the passage and acceptance of subsequent ordinances.

"(5). Twenty years' exercise of the franchise in qusetion is a complete defense in this action.

"(6). If the right of action in such cases as this may be lost by mere passive acquiescence, as provided by the statutes of limitation, on principle and for the most convincing reasons it may be as effectually lost by affirmative acts, such as express consent to, and active co-operation in, an enterprise the results of which are beneficial to one of the parties, the public, while the other party would sustain a great loss if the public were permitted to repudiate its own acts."

Precisely what is meant by the averments of the petition is not clear. If the defendant has the right, privilege and franchise of maintaining and operating a street railway in the streets and avenues specified, it is not apparent that the state or the city is or can be in any manner affected by the claim that the right is perpetual. In *State* v. *Cincinnati Gas Light & Coke Company,* 18 Ohio St., 262-288, Scott, J., says:

"As we understand it the gas company claimed to have the *exclusive* right to use the streets of the city of Cincinnati for the purpose of laying pipe and conveying gas, a right exclusive as against the city, so that the municipal authorities can neither use, nor authorize any other person or corporation to use the streets for a similar purpose. And this is not a mere claim made by empty speeches, the validity of which so long as it remained unexercised, could not, perhaps, be made the subject of investigation by a proceeding such as the present."

In *Railroad Company* v. *Defiance,* 52 Ohio St., 262, it is ruled that—

"6. Every grant in derogation of the right of the public in the free and unobstructed use of the streets, or restrictive of the control of the proper agencies of the municipal body over them, or of the legitimate exercise of their powers in the public interest, will be construed strictly against the grantee, and liberally in favor of the pubic, and never extended beyond its express terms when not indispensable to give effect to the grant."

And in *Fertilizing Company* v. *Hyde Park,* 97 U. S., 659, Mr. Justice Swayne says:

"The rule of construction in this class of cases is that it shall be most strongly against the corporation. Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded, but what is given in unmistakable terms or by an implication equally clear. The affirmative must be shown. Silence is negation, and doubt is fatal to the claim."

See also *Transportation Co.* v. *Pullman Palace Car Company,* 139 U. S., 24.

By this rule counsel for the defendant wish us to determine the right of the defendant.

But it is important that other rules be not overlooked lest this be misapplied. In *Detroit Citizens' St. Ry. Co. et al.* v *City of Detroit,* 64 Fed. R., 628-639, Lurton, C. J., says:

"We entirely agree with the rule which requires a strict construction of the powers of municipal corporations and that such corporations can exercise only those powers which are either granted by express words, or those necessarily or fairly implied in or incident to the powers expressly granted, or those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. I Dill. Mun. Corp., Sec. 35.

"But the books abound in rules of construction. They all have one end in view, and that is to ascertain and declare the intent of the act under construction."

The street railway act of 1861 (58 O. L., 66; S. & S. 134), required the persons applying for a charter to specify by certificate "the names of the streets, alleys and avenues or other public

grounds through which such roads shall pass," and provides, when the statute has been complied with, that the incorporators and their associates, successors and assigns, shall be deemed a body corporate with succession and "such corporation shall be authorized to construct, operate and maintain a street railway, with single or double track, on the streets, alleys, or avenues, or other public ground specified in the certificate, with such sidetracks, turnouts, offices, buildings, and depots as they may deem necessary, between the points of termini named in the certificate and transport thereon passengers and their packages and baggage;" that the company may borrow money and secure the payment of the loan by mortgage on its property, real and personal, and upon its franchises, including the franchise of being a corporation; that such companies, when their lines connect so that cars may pass continuously over them, may consolidate themselves into a single corporation in the manner provided for the consolidation of railroad companies. And section five provides: "That hereafter no street railroad shall be constructed, or commenced until the consent of the city council or corporate authorities of the city, town or village wherein such road is to be constructed, shall have been first obtained; and it shall be competent for the city council or corporate authorities of any city, town or village, to agree with any street railroad company, organized in pursuance of this act, or with any individual or company of individuals, desiring to construct a street railroad in such city, town or village, upon the manner and upon the terms and conditions upon which such corporation, individual or company of individuals, shall construct and operate a street railroad in such city, town or village."

This act was supplemented by an act passed in 1866 (64 O. L., S. & S. 137), Section 2 of which is as follows:

"Section 2. That the council of any city or incorporated village shall prescribe by ordinance the manner and the terms and conditions upon which the streets and avenues of such city or incorporated village may be used or occupied by street railroads, and shall make no grant and give no consent for the use or occupation of the streets or avenues for a street railroad, until the public notice of the intention to make the grant, or give the consent and inviting proposals therefor, at a specified and place, shall be pub-

lished for three successive weeks in one or more of the principal newspapers of said city or incorporated village, or having circulation therein; nor shall such grants be made or consent be given, except to such company or such individual, or company of individuals, as will agree to carry passengers upon said railroad at the lowest rates of fare, and all reductions of the rates of fare shall inure to the benefit of the passengers carried."

The contention of counsel for the defendant is that these statutes expressly confer upon municipalities power to grant the right to use the streets, and that the power being unlimited as to the duration of the grant, it is in the discretion of the municipality to grant without limitation, and if it does, the grant is irrevocable and perpetual.

The relator concedes that power to grant is expressly conferred, but contends that inasmuch as the statute is silent as to time, power to make a perpetual grant is not expressly given and that the exercise of the power is subject to the limitation that it must be reasonable and that therefore the municipality may not grant for longer than a reasonable time and that a grant silent as to time is only for a reasonable time.

That power to make a perpetual grant is not expressly given finds support in the opinion of Mr. Justice Brown in *Wabash R. R. Co.* v. *Defiance,* 167 U. S., 88, 93. This is the case already referred to, 52 Ohio St., 262. The object of the suit was to enjoin the city from making an improvement of its streets that would necessitate the removal of certain bridges over the railroad tracks where they crossed a street. The contention was that the bridges had been erected by the railroad company under a contract with the city, authorized by Section 3283, R. S., which provides that when it is necessary to occupy a street or any part thereof by a railroad, the municipality and the company *may agree upon the manner, terms and conditions.* Mr. Justice Brown says (93):

"The language of this ordinance is rather that of a license than that of a contract; the railway is authorized to erect new bridges of a certain construction, provided that the company shall also build sufficient approaches and grade to each of said bridges, and keep them in good repair. The city itself agrees to do nothing, except to permit gravel to be taken from its gravel bed, without

charge, for the construction of such approaches. It does not agree that the bridges or their approaches shall remain any particular length of time, or that it shall not make new requirements as the growth of the city may seem to suggest. The only contract as to time which could possibly be extracted from this ordinance would be that the railway company, on building the bridges and approaches, should be entitled to maintain them in perpetuity. The result would be that, if the city should, in the growth of its population, become thickly settled in the neighborhood of these bridges, they would stand forever in the way of any improvement of the streets. This proposition is clearly untenable. It is incredible, in view of the language of this ordinance, that the city could have intended or the railroad company have expected, that the former thereby relinquished forever the right to improve or change the grade of these streets.

"If it were possible that a city could make such a contract at all, it could only be done by express authority of the Legislature, and in language that would admit of no other interpretation."

And also what is said by Mr. Justice McKenna in *Citizens' Street Ry. Co.* v. *Detroit Railway,* 171 U. S., 48, 54:

"To refer the right to occupy the streets of any town or city to the consent of its local government was natural enough and would have been natural under any constitution not prohibiting it, and the power to prescribe the terms and regulations of the occupation derive very little if any breadth from the expression of it, but assuming the power to prescribe terms does acquire breadth from such expression, surely there is sufficient range for its exercise which stops short or which rather does not extend to granting an exclusive privilege of occupation."

Again he says:

"The rule is one of construction. Any grant of power in general terms read literally can be construed to be unlimited, but it may, notwithstanding, receive limitations from its purpose—from the general purview of the act which confers it. A municipality is a governmental agency—its functions are for the public good, and the powers given to it and to be exercised by it must be construed with reference to that good and to the distinctions which are recognized as important in the administration of public affairs.

"Easements in the public streets for a limited time are different and have different consequences from those given in perpetuity.

Those reserved from monopoly are different and have different consequences from those fixed in monopoly. Consequently those given in perpetuity and in monopoly must have for their authority explicit permission, or, if inferred from other powers, it is not enough that the authority is convenient to them, but it must be indispensable to them."

It is settled by the weight of authority that the construction and operation of a street railway in a street is not a new use of the street, and that therefore municipalities *under their power of general control of streets* may permit such use by persons or corporations, having a franchise to construct and operate such railways, and that such permit is merely a license revocable at the pleasure of council, but that the power to grant an irrevocable right to so use the street in perpetuity or for a definite term is a different and distinct kind of power and does not exist in the municipality unless expressly conferred.

Dill on Mun. Corp., Sec. 573; Elliott on Roads, 563; Booth on St. Rys., Sec. 15; *City of Detroit* v. *Detroit City Ry. Co.,* 56 Fed. R., 867; *Detroit Citizen's St. Ry. Co.* v. *City of Detroit,* 64 Fed R., 629.

It is also settled that a municipality is without power to grant an exclusive right to use the streets unless the power is expressly granted or necessary to the execution of the powers expressly granted. *State* v. *Cincinnati Gas Light & Coke Co.,* 18 Ohio St., 262; *Cincinnati St. R. R. Co.* v. *Smith,* 29 Ohio St., 29; *Detroit Citizens' St. Ry. Co.* v. *Detroit Ry.,* 17 U. S., 48.

It is contended that the same reasoning leads to the conclusion that the city of Columbus was without authority to grant a perpetual right to use its streets. The ordinance is silent as to time and so is the statute. The cases are not in accord. In *People* v. *O'Brien et al,* 111 N. Y., 1, a street railway company obtained from the city of New York authority to lay tracks and run cars over Broadway upon certain terms and conditions, but without any limitation of time in the resolution or reservation of power of revocation, and it is held that the grant is in fee, vesting the grantee with an interest in the street in perpetuity to the extent necessary for a street railroad. *State* v. *The Corrigan St. Ry. Co.,* 85 Mo., 263,

seems to be to the same effect. In *The Des Moines St. Ry. Co.* v. *The Des Moines B. G. St. Ry. Co.*, 73 Ia., 513, 521, a grant exclusive for thirty years is sustained, and it is said: ··

"The ordinance appears to us to be reasonable; and our holding is that, under our statute, which empowers cities to authorize or forbid the laying down of a street railroad track, a city council may make a reasonable provision by contract for present and future street railroad service, and may secure the company contracted with against the impairment of its profits for a limited time, and against interference with its extension during the time, if a larger and better or more important service can be thus obtained."

In *Detroit Citizens' St. Ry. Co.* v. *The City of Detroit*, 12 C. C. A., 365; 64 Fed. R., 628 (before Jackson, C. J., Lurton, C. J., and Sage), it is held under the laws of Michigan authorizing the organization of companies to construct and operate street railways, with a proviso that no such company shall be authorized to construct a railway through the streets of a city without the consent of the municipal authorities, and under such regulations and upon such terms and conditions as they may from time to time prescribe, that power is expressly conferred upon a municipality to grant a right of way in its streets and that as such power was conferred without express words of limitation, and the terms and conditions upon which the grant was to be made were left to the discretion of the city, the term of such grant was not necessarily limited by the duration of the franchises of the grantee, and a grant for a definite term and sixteen years beyond the term of the corporate life of the grantee was sustained.

In *Citizens' St. Ry. Co.* v. *City Ry. Co.*, 64 Fed. R., 647, it is true that the franchise is granted by the city, since the ultimate ing the construction of any railroad through the streets of any city, consent of the common council to the location, survey and construction thereof should be obtained; that the city had no power to limit the term and that whether it had or not the consent was good for the term granted. Wood, C. J., says:

"The corporate existence and the franchise of a street railway company organized under the law of 1861 are derived directly from the state, but are subject to the condition that the consent of the

common council shall be obtained to the location, survey and construction of any street railroad through or across the public streets of any city before the construction of the same shall be commenced. The consent of the common council being required, is in a sense true that the franchise is granted by the city, since the ultimate right is acquired or becomes effective only upon the giving of that consent. *Andrews* v. *Pipe Works* (7th Circuit), 10 C. C. A., 60; 61 Fed., 782. The power to construct tracks, switches, sidetracks, or turnouts upon the streets, and, by implication the right to run cars thereon, is conferred by the statute, or, in other words, is derived directly from the state, so that strictly speaking, the city does not grant the franchise, but simply consents to its exercise."

This case went to the Supreme Court of the United States (*City Ry. Co.* v. *Citizens R. R. Co.,* 166 U. S., 577), and that court declined to express an opinion whether the right or franchise in the streets was perpetual, but held that the street railway company had a valid contract with the city for a right of way for thirty-seven years.

The opinion in *Detroit Citizens' St. Ry. Co.* v. *City of Detroit,* 64 Fed. R., 628, is by Lurton, C. J., and he differs with Judge Woods respecting the nature of the right of way in a street. The latter, as we have seen, is of the opinion that it is a franchise granted by the state, while the former is of the opinion that it is an easement granted by the city. He says (641):

"To the practical operation of a street railway, three things were essential under the law of Michigan. These were:

"First. Corporate capacity; this, because under the law of that state there seems to have been no provision by which natural persons could directly acquire the other requisite franchises.

"Second. A franchise to operate the road and take tolls.

"Third. A right to occupy particular streets with the necessary tracks and equipments.

"These three requisites are distinct and separable. The first two are essentially franchises which could only come from the state; the third and equally essential requisite could not come from the state, and, if acquired at all, must come from the municipality within which it was proposed to exercise its substantial franchises. This conclusion is rested on the limitation imposed upon the legislative power of the state concerning purely municipal interests."

And again (644) :

"The right to construct and operate a road through an orchard or garden or on the public streets is dependent, in the first instance, upon the consent of the owner of the orchard or garden, and, in the second, upon the consent of the local government controlling the public street. This consent or permission, is in all respects, whether it be permanent or for a term of years, or at the will of the one consenting, what the law denominates an 'easement,' the duration of which is dependent only upon the extent of the interest the grantor had authority to grant, and the terms of the consent itself. That the power, whatever it may be, is not an implied power, is most obvious. The Legislature, it must be remembered, did not have the power, independently of the city, to grant to any company a right to enter upon and occupy the streets of Detroit."

Again (646), he says:

"This power to 'consent' is not an implied power. The power is directly imported by the language of the act. To say that the municipalities shall have power to consent to such use of the public streets is to say no more than is imported when the Legislature says that such company may put down their tracks with the consent of the city, on terms and conditions agreed upon between the city and the company. In the latter case, quite as plainly as by the first form of expression, the Legislature permits the exercise of the power to grant an easement for such purposes. No rule of construction would authorize us to say that in the one form the power is any more express than in the other."

And finding no limitation as to the length of the term which it may grant, he concludes that that is just as clearly a matter about which municipal discretion is to be exercised as any other of the terms of the grant, and he says (647) :

"The evils to be apprehended from long grants of easements to such companies seem to us not to be such as to justify a constructive limitation on that account. The power to make an irrevocable contract giving an easement of some considerable duration is an inseparable incident in any scheme for furnishing such public facilities as a street railroad. The duration of such grants must be a question of discretion to be exercised by some public authority. That the exercise of that discretion should be left to the local government as a question of purely local interest seems most consistent

with the proprieties of the case, and most in accord with the de-
centralizing policy so peculiar to the state of Michigan."

It is however important to call attention to the fact that he states
that the conclusion that the state could not grant the right to use
the streets is based upon a constitutional limitation upon the legis-
lative power of the state of Michigan, concerning local and munici-
pal matters.

In the absence of a limitation in the Constitution of the legisla-
tive power, a right of way in the streets of a city may be granted
by the Legislature without the consent of the city. *Mayor, etc., of
Jersey City* v. *Jersey City,* and *Bergen* v. *R. R. Co.,* 20 N. J., Eq.,
360. Perhaps in the absence of such a limitation, Judge Lurton
would agree with Judge Woods that a right or franchise to use a
street is conferred by the state and that the city merely consents
to its exercise.

We are inclined to the opinion that the right to construct the
road in the street is a privilege or franchise granted by the state,
and the fact that the privilege is not to be exercised until the con-
sent of a municipal agent of the state is obtained, does not change
the source of power, but is merely a condition to the exercise of
the privilege.

Section 26 of Article II of the Constitution provides:

"That no act except such as relates to public schools shall be
passed to take effect upon the approval of any other authority than
the General Assembly, except as otherwise provided in this Con-
stitution."

Construing this section there are numerous decisions to the
effect that it is not contravened by statutes authorizing subscrip-
tions to railroads or providing that certain things authorized by the
statute shall not be done until first submitted to a vote of the
people, because it is held that such acts do not delegate the power
of the legislation but merely a discretion as to the execution of the
law.

But whether the grant be directly from the state or immediately
through the city is perhaps not material so far as its revocability
by the Legislature is involved, for in either case if it be a special

privilege, within the meaning of the Bill of Rights, it may be altered, revoked or repealed by the General Assembly. And notwithstanding such reservation to the General Assembly, may, in the absence of express prohibition, authorize a municipal corporation to bind itself by contract as to the exercise of such privilege. In *Detroit* v. *Detroit Citizens' St. Ry. Co.*, 184 U. S., 368-382, Mr, Justice Peckham says:

"But there can be no question in this court as to the competency of the state Legislature unless prohibited by constitutional provisions to authorize a municipal corporation to contract with a street railway company as to the rates of fare and so to bind during the specified period any future common council from altering or in any way interfering with such contract."

This brings us to the question of the power that was delegated to the city by the Legislature. We have already seen that statutes such as these under consideration delegate power to a city to bind itself by contract and not merely power to license. And the statutes and the ordinances both being silent as to time the question arises as to the terms of life of the grant. It is apparent from the opinion in *Citizens' St. Ry. Co.* v. *City Ry. Co.*, 64 Fed. R., 647, that Woods, C. J., is of the opinion that the right to use the street is a franchise granted by the state, and that it is of perpetual duration, subject only to legislative revocation, and he further says (651):

"In the nature of things a street railway, once established where needed, will be of perpetual and increasing utility; and there seems to be no good reason why the franchise should cease while the utility lasts, though there may arise, from time to time, and within periods much shorter than thirty years, necessity for changing the regulations, limitations, or conditions under which the franchise shall be employed. How far the power to make such changes shall be committed to local authorities is a matter of legislative discretion."

In *Detroit* v. *Detroit St. Ry. Co.*, 184 U. S., 386, 383 and 384, where the right of the city to change the rate of fare that had been agreed upon is determined, Mr. Justice Peckham says:

"It will be seen that under Section 34 of the Tram-railway Act, as it was enacted in 1861, a railway corporation organized under the

.act could not construct a railway through the streets of a city with-
.out the consent of the municipal authorities, 'and under such regu-
lations and upon such terms and conditions as said authorities may
from time to time prescribe.'   Hence it is agreed that any terms or
conditions under which the railway company obtained the consent
of the municipal authorities might by the same authorities be from
time to time altered as they should, in their discretion, think fit."
*   *   *   "Can it be possible that under this language permitting
consent upon such terms and conditions as the city might from
time to time prescribe, the power was reserved to make a rate of
fare which might ruin the whole enterprise?   That a rate once de-
liberately and mutually agreed upon might be thereafter and from
time to time altered at the pleasure of the city alone?   Will it be
believed the parties thus understood the meaning of that provision?
It would hardly be credible that capitalists about to invest money
in what was then a somewhat uncertain venture, while procuring
the consent of the city to lay its rails and operate its road through
the streets in language which as to the rate of fare amounted to
a contract, and gave the company a right to charge a rate then
deemed essential for the financial success of the enterprise, would
at the same time consent that such rate then agreed upon should
be subject to change from time to time by the sole decision of
the common council.   It would rather seem that the language
above used did not and was not intended to give the right to the
common council to change at its pleasure from time to time those
important and fundamental rights affecting the very existence and
financial success of the company in the operation of its road, but
that by the use of such language there was simply reserved to the
city council the right from time to time to add to or alter its gen-
eral regulations or rules for the proper, safe and efficient running of
the cars, the character of service, the speed and number of cars,
and their hours of operation and matters of a like nature, such as
are described in the opinion of the court below in this case."

And on page 387, he quotes with approval from *City Ry. Co.* v.
*Citizens' St. Ry. Co.,* 166 U. S., 557 (which is the same case in
which Woods, C. J., announces the opinion of the Circuit Court,
64 Fed. R., 647), the following:

"The original ordinance of January 18, 1884, was plainly a prop-
osition on the part of the city to grant to the company the use of
its streets for thirty years in consideration that the company lay
its tracks and operate a railway thereon upon certain conditions
prescribed by the ordinance.   This proposition when accepted by the

company, and the road built and operated as specified, became a contract which the state was not at liberty to impair during its continuance; but if, at the expiration of the thirty years, the road had been sold to another company, and that company had applied for and obtained from the common council a franchise to occupy its tracks for another period, it seems to be clear that such a contract would need no other consideration to support it than the continued operation of the road under such conditions as the city chose to impose."

It is proper to observe .that in each of the last two cases cited the justice writing the opinion was particular to observe that the Legislature had not attempted to repeal or revoke the franchise granted to the street railway company, and that the extent of its power to do so was not involved.

In 64 Fed. R., 647-658, supra, Baker, D. J., says:

"The state gave it the capacity to receive and enjoy this right or franchise, provided the city saw fit to grant it.    The power to grant or refuse resided in the city alone, and it carried with it the right to impose any terms not forbidden by law.    If the city may refuse permission to use the streets at all, it must have the right to fix a limit to the term of their use.    The greater power must include the less.    He who can give the whole can give a part.    He who can grant absolutely can grant with a condition, reservation, or limitation.    Whether street railroads shall be permitted to occupy the streets at all is left wholly with the city to determine upon its own judgment of the public convenience and welfare.    The ordinance of 1864 was an entirety, to be accepted or refused just as it was, and its acceptance was a condition precedent to the occupancy of the streets.    Nothing, therefore, could make the ordinance a consent but the performance of the condition—the acceptance of the ordinance as a whole.    City of Allegheny v. Millvale E. & S. St. Ry. Co. (Pa. Sup.), 28 Atl., 202.    The power to determine whether, and how long, street railroads may occupy the streets of a city, primarily resides in the state; but it is a power whose exercise has been wisely delegated to those who are directly interested in these questions. There is a less danger of wrong and injustice in committing their determination to the city than there would be if the Legislature should determine them directly.    The authorities of the city acting upon matters of local concern, directly affecting themselves and their fellow citizens are not more likely to abuse their trusts in fixing the terms upon which a street railroad may occupy the street

of the city than the Legislature would be.  Local self-government and home rule in matters of municipal concern are of the essence of a republican form of government.  Abuse of these delegated powers are securely guarded against by the superintending power of the state to correct them.  It seems to me that the common council had ample power to grant to the complainant the right to use the streets for thirty years, subject to the paramount power of the state to alter the term.

"The fact that the complainant is invested with perpetual corporate existence does not, in my opinion, in any wise affect the power of the city to limit the use of the streets for railway purposes to a definite term of years.  A corporation having a limited term of existence may acquire a title to property extending beyond the term of its corporate life.  So, on the other hand, a corporation having perpetual existence may acquire property for corporate use for a term of years or in fee, to be determined by the terms of the grant under which its title is acquired.

"Nor does the power of the state to alter the term, in my judgment, affect the binding force of the contract between the city and the street railroad company.  The obligation of a contract or a law is not affected or impaired by the mere fact that it may be determined by the happening of some uncertain event in the future.  Until the contingency arises, upon the happening of which their existence is to be determined, they are as binding and obligatory as though they were never to terminate.  While the power of the state to alter or repeal remains unaffected, neither the city nor the railroad company retains any rightful power to impair or defeat the binding force of the contract evidenced by the ordinance and its acceptance."

The views of this court in *State v. Central Union Telephone Co.,* 11 O. C. C., 55, are in accord with those of Judge Baker, and his views are not inconsistent with the judgment rendered by the Supreme Court of the United States in 166 U. S., 557.  It will be observed that the Legislature, by the acts already cited, provided that a street railway company, formed as therein authorized, shall be a body corporate with succession, and that it might mortgage its real and personal property and franchises, including the franchise of being a corporation.  In view of these provisions and of the large expenditures necessary to such use of the streets, and of the fact that such use was comparatively new and the financial success of the venture uncertain, it would be unreasonable to conclude

that it was the intention either of the Legislature, or of the city or other agent of the state, to grant merely a license revocable at the pleasure of the city, and the conclusion is irresistible that it was the intention of the grantor to consent to such use of the street either in perpetuity, or for a reasonable time, or without limit of time, and in either event, the result must be the same in this action, for the state has not determined or limited the term and no attempt has been made to show what would be a reasonable time, and it is not apparent from the agreed facts; and if the grant is not from the state, but from the city, then we are of the opinion that the whole matter was committed to the city and that it might in its discretion grant in perpetuity, and that its grant being silent, as to time is in perpetuity, it being unreasonable to conclude that it was merely at pleasure. No case holding that a grant in perpetuity is void has been brought to our notice, nor any in which it is attempted to show that the reasoning upon which an exclusive grant is held void would require a like conclusion.

It is contended that it is not decided in *Detroit Citizens' St. Ry. Co.* v. *City of Detroit,* 64 Fed. R., 628, *supra,* that it is in the power of a city to grant to a street railway company a perpetual easement in the street. This probably is correct, but it is not important, for in *Louisville Trust Co.* v. *City of Cincinnati,* 76 Fed. R., 296 (Taft, Lurton and Hammond), Lurton, C. J. (309), says:

"In *Detroit Citizens' Ry. Co.* v. *City of Detroit,* cited heretofore, we had occasion to construe these words, 'terms and conditions,' and held that where the local government has or is given power to consent to the occupation of the public streets by such corporations upon terms and conditions to be agreed upon, the power to act was an unlimited power, and said that unless some limit was to be found in other provisions of law or implied from other considerations peculiar to the law of Michigan, the time for which such grant might be made was a matter wholly within the discretion of the local government as much as any other term or condition of the grant."

And again (315), speaking of the grant in the case then under consideration, he says:

"The grant under the ordinance of December, 1871, was unlimited as to time. There was at that time no statutory restriction

upon the power of a city to grant an unlimited street easement to either a railroad or a street car company, having the requisite franchises from the state. The act limiting the power of a city to a term not exceeding twenty-five years was not passed until May 14, 1878. Neither do we think there was any implied restriction upon the power of the city, springing from the reasons of public policy. The corporation to which this grant was made was perpetual, and we see no sufficient reason which would justify the court in holding that it was not within the discretion of the municipal government to grant to such a company an unlimited easement upon the streets."

The conclusion that the right to use the streets is perpetual, the ordinance being silent as to time, if the right is from the city and not from the state, is supported by the opinion of Mr. Justice Brown in *Wabash R. R. Co.* v. *Defiance,* 167 U. S., 88, *supra,* for he says:

"The only contract as to time which could possibly be extracted from this ordinance would be that the railway company on building the bridges and approaches should be entitled to maintain them in perpetuity."

His contention is that the city had not exercised the power to contract but the power conferred by the grant of general control of the streets.

In *Grand Rapids Electric L. & P. Co.* v. *Grand Rapids Edison El. L. & F. G. Co.,* 33 Fed. R., 659, Jackson, C. J., afterwards Mr. Justice Jackson, says (676):

"The authority of the municipal corporation to make contracts in respect to objects entrusted to its administrative care and supervision, as a local agency of the state, is *one* thing, while the power to grant *exclusive* franchises, which belongs to the sovereign, is *another* and essentially different matter."

In order to grant permission to one person to use the street it is not necessary to agree to exclude all others, and therefore the power to do the latter can not be implied from the power to do the former, but an easement in a street must necessarily be of some duration and if the right to use the street is not a privilege or a franchise granted by the state, but an easement granted by the

city under a power conferred by the state, the power to give it dura-tion necessarily is implied from the power to grant the easement, and the statute being silent as to time, the power in that respect is unlimited. The power of the city is conferred in general terms and to say that power to do a thing within the general terms is not conferred because not expressed or not necessary is to deny all power, for nothing is otherwise expressed.

If the question of existence of power in the Legislature to limit or terminate the privilege of using the streets is involved, we are of the opinion that it has such power under Section 2 of Article I and Sections 1 and 2 of Article XIII of the Constitution. Section 2 of Article I provides that no special privilege shall ever be grant-ed that may not be altered, revoked or repealed by the General As-sembly, and, as already indicated, we are of the opinion that the right or franchise to use the streets is a special privilege granted by the state.

In New York, the fee of the land covered by a street is in the city. In this state it is by legislative enactment declared to be in the city. It might have been declared to be elsewhere. It is im-material so far as the power of the state to control the street is concerned.

In *Street Railway* v. *Cumminsville,* 14 Ohio St., 523-544, Ran-ney, J., says:

"In either of the modes known to our laws, by which lands are acquired for a public highway, an interest, commensurate with the attainment of the objects of the acquisition, vests in the public at large, and is necessarily placed under the exclusive control of the law-making power. Whatever is fairly within the contemplation of a grant, whether voluntary or forced, and necessary to its ben-eficial enjoyment, is within the legal operation of the instrument or proceeding by which it is effected."

And again (546):

"But while our decisions have been thus liberal, in allowing to the General Assembly the largest discretion, in the management and control of easements acquired for public highways, we have been very careful to say, in the case to which reference has been made, as well as upon other occasions, that they could not be di-verted to other purposes than those for which they were acquired,

nor enlarged so as to accumulate additional burdens upon the land, or destroy or impair the incidental rights of the owner, appurtenant to his lands located upon the street or highway. The distinction lies between those things which fairly belong to the grant, and those which are reserved to the owner, or by law, attach as incidents to his property. For this purpose, there is no occasion to distinguish between lands acquired for ordinary highways, leaving the fee in the owner, and lands dedicated for streets in towns, where the fee vests in the municipal corporation, in trust to answer the purposes of the use. In either case the interest acquired and used by the public at large is an easement of a definite character, and held for the attainment of known objects.

"The Legislature of the state represents the public at large, and has, in the absence of special constitutional restraint, and subject (according to the weight of more recent judicial opinion) to the property rights and easements of the abutting owner, full and paramount authority over all public ways and public places. 'To the commonwealth here,' says Chief Justice Gibson, 'as to the king of England, belongs the franchise of every highway as a trustee for the public; and streets regulated and repaired by the authority of a municipal corporation are as much highways as are rivers, railroads, canals, or public roads, laid out by the authority of the quarter sessions.'" 2 Dill. on Mun. Corp., 656. See also Elliot on Roads and Streets, Sec. 423; *Cincinnati St. R. R. Co.* v. *Smith,* 29 O. S., 304-306.

In *State* v. *Cincinnati Gas Light & Coke Co.,* 18 Ohio St., 262-292, Scott, J., says:

"We think it can not be doubted that the right to use the streets of a city for the purpose of laying pipes to convey gas, whether in the hands of a private corporation or a natural person, is a franchise, and, as such, can only emanate directly or indirectly from the sovereign power of the state. And the position that the city council of Cincinnati in making the contract with Conover is to be regarded as a private corporation, granting an easement in its own property, can not be maintained. In one sense, and to a certain extent, the streets may be said to belong to the city; but, as highways the public have an interest in them, and the city council can not change the character of the public use to which they may have been dedicated by the original proprietors. Wherever the statute may have, from time to time, provided that the fee in the streets shall be considered as being vested, it has always declared that it shall be so vested for the uses of the dedication.

Whatever powers of supervision and control the Legislature may have conferred upon the city council for the purpose of rendering the enjoyment of the public easement or use more convenient and beneficial, or with a view to the safety, health, convenience, or comfort of the inhabitants of the city, these powers are all of a public municipal character, and their exercise is quite different from the acts of a private corporation, dealing, at its discretion, with property over which it may exercise all the rights incident to absolute ownership."

True he also says (293) :

"Now, we concede that the streets of a city may be appropriated to authorized purposes, promotive of the convenience and welfare of its inhabitants, and not substantially interfering with the public easement or right of travel. And from partial appropriations of this character, rights of private property may arise which can not rightfully be disturbed." (See also 172 U. S., 559).

But this would not be so in the face of a constitutional inhibition against making an irrevocable grant.

Therefore, to treat a street not as an easement held in trust for certain public uses, but as real estate that may be granted or contracted away is likely to lead to a wrong conclusion.

But it is contended that Section 2 of Article I has no application, and *Atchison St. Ry. Co.* v. *Mo. Pac. Ry. Co.*, 31 Kan., 660, is cited in support of the contention that the consent given by a city to the construction of a street railway in the street is not a special privilege. Attention is directed to the fact that the opinion is by Brewer, J. We are of the opinion that Mr. Justice Brewer now entertains different views. See *Brenville Water Supply Co.* v. *Mobile,* 186 U. S., 212, 223. He says (223) :

"By a separate section of the Constitution it is affirmatively declared that the Legislature shall pass no act 'Making an irrevocable grant of special privileges or immunities.' While that body may grant special privileges and immunities, grant franchises to build waterworks, construct railways, or other works of public utility, and by a failure to duplicate a grant make it in effect for the time being exclusive, yet no one Legislature can forestall action by a succeeding Legislature or bind the state by making the grant in terms exclusive. As much force and effect must be given to Section 23 as to any other, and it was obviously the intent that even

if exclusive privileges were granted, the monopoly feature thereof should always be subject to revocation. In this section there is no suggestion of amendment or alteration. That which is distinctly provided is the absolute power of revocation. To hold that the exclusive feature of plaintiff's grant could not be revoked because thereby injustice might be done to the corporators, is simply to nullify Section 23."

But irrespective of decisions elsewhere we are to be guided by the interpretation of that section by the Supreme Court of our own state, and *Shields* v. *The State,* 26 Ohio St., 86, is to the effect that the rate of fare that may be charged by a railroad company is subject to change under this section.

In *Greenwood* v. *Freight Co.,* 105 U. S., 13-18, Mr. Justice Miller, speaking of the legislative reservation in Massachusetts in substance providing that every act of incorporation shall be subject to amendment, alteration or repeal, at the pleasure of the Legislature, says :

"What is the effect of the repeal of the charter of a corporation like this ?

"One obvious effect of the repeal of a statute is that it no longer exists. Its life is at an end. Whatever force the law may give to transactions into which the corporation entered and which were authorized by the charter while in force, it can originate no new transactions dependent on the power conferred by the charter. If the corporation be a bank, with power to lend money and to issue circulating notes, it can make no new loan nor issue any new notes designed to circulate as money.

"If the essence of the grant of the charter be to operate a railroad, and to use the streets of the city for that purpose, it can no longer so use the streets of the city, and no longer exercise the franchise of running the railroad in the city. In short, whatever power is dependent solely upon the grant of the charter, and which could not be exercised by unincorporated private persons under the general laws of the state, is abrogated by the repeal of the law which granted these special rights.

"Personal and real property acquired by the corporation during its lawful existence, rights of contract, or choses in action so acquired, and which do not in their nature depend upon the general powers conferred by the charter, are not destroyed by such a repeal; and the courts may, if the Legislature does not provide some special remedy, enforce such rights by the means within their

power. The rights of the shareholders of such a corporation, to their interest in its property, are not annihilated by such a repeal, and there must remain in the courts the power to protect those rights."

Then after reference to the origin of such reservations, he says (21):

"This history of the reservation clause in acts of incorporation supports our proposition, that whatever right, franchise or power in the corporation depends for its existence upon the granting clauses of the charter, is lost by its repeal." * * * "It results from this view of the subject that whatever right remained in the Marginal Company in its rolling stock, its horses, its harness, its stables, the debts due to it, and the funds on hand, if any, it no longer had the right to run its cars through the streets, or any of the streets of Boston. It no longer had the right to cumber these streets with a railroad track which it could not use, for these belonged by law to no person of right, and were vested in defendants only by virtue of the repealed charter.

"It was, therefore, in the power of the Massachusetts Legislature to grant to another corporation, as it did, the authority to operate a street railroad through the same streets and over the same ground previously occupied by the Marginal Company."

If we are correct in our conclusion that the right to use the streets is either a special privilege or a chartered power, it follows that it is subject to legislative control under Section 2, Article I, and Sections 1 and 2, Article XIII, of the Constitution.

But the right or franchise conferred by the state being unlimited as to its duration and the city under its power to agree upon the terms and conditions under which the right might be exercised, not having imposed any such limitation, the right continues subject to be determined only in virtue of the power reserved either by legislation or by the courts by forfeiture. No forfeiture has been declared, and we are of the opinion that the provision of the municipal code of 1878 (75 O. L., 360) was intended to have only a prospective operation. In *City Ry. Co.* v. *Citizen's R. R. Co.,* 166 U. S., 557-565, Mr Justice Brown says:

"Did the act of 1891, known as the new charter, repeal the act of 1861 authorizing the incorporation of railway companies? In

other words, should it be construed as an exercise of the power, reserved to the state in the eleventh section of the act of 1861, to amend or repeal that act at the discretion of the Legislature? As the act of 1891 practically established a new system and vested the whole power of the Legislature over street railway companies in the board of public works of the several cities therein named, subject to the approval of the common council of such cities, perhaps it might be construed to repeal the former so far as there was a conflict between the two acts; but it certainly should not be construed to act retrospectively, or to affect contracts entered into prior to its passage, unless its language be so clear as to admit of no other construction. While it was doubtless intended to authorize the board of public works of the cities covered by the act to contract for the use of their streets by railway companies, there is nothing from which can be inferred a power to disturb or interfere with contracts already existing—indeed, it is highly improbable that it would ever have delegated such a power to a subordinate body. There is always a presumption that statutes are intended to operate prospectively only (*Shreveport* v. *Cole*, 129 U. S., 39), and we see nothing in this statute to rebut such presumption." See also *Bernier* v. *Becker*, 37 Ohio St., 72-74; *Kelley* v. *Kilso*, 5 Ohio St., 198.

It is contended that the franchise in Friend, now Main street, expired in 1888, because the act (65 O. L., 205) authorizing the board of public works to consent to the construction of the road in that street by the Friend Street Railroad Company was to continue in force only twenty years. But before the consent was given another act was passed (65 O. L., 206), requiring the board to grant the right to build the road upon terms not less favorable to said company than were the existing terms granted by the city of Columbus to the Columbus St. R. R. Co. This act was entitled an act "supplementary" to the former act. Section 2 of the former act provided: "This act to be in force from and after its passage and to continue in force for twenty-five years from and after the first day of November, A. D., 1869." While Section 2, of the supplementary act read: "Sec. 2. This act shall take effect from its passage."

It is contended by the defendant that the latter act superseded the prior act (*Schneider* v. *Staple*, 66 Wis., 167) and that as the

latter act contained no limitation as to the time it should continue in force and as the grant was made after it took effect, the grant is without limitation and is perpetual. We are of the opinion that the latter act superseded the first section of the prior act and that it is to be construed as though introduced in the place of the first section of the original act (*McKibbon* v. *Lester,* 9 O. S., 627), and therefore subject to the limitation in Section 2.

But the city in 1869 by ordinance also consented that Friend or Main street might be used for the Friend Street Railway Company, and it was provided that the ordinance should be in force for and during the term of the railroad company's charter, and in 1873 the state (70 O. L., 194) transferred control over this part of the national road (Main street) to the city and the city by ordinance in 1873 accepted such control.

Now, if we are right in our conclusion that the franchise to use the street was conferred by the state and that the board of public works or other agency of the state merely consented to the exercise of the franchise, the franchise did not expire at the end of the twenty years, and the state having transferred control to the city, the consent of the board of public works was no longer necessary. Moreover, the board of public works was not invested with power to agree as to the duration of its consent. That the act itself determined.

It is also contended that the ordinance containing the provision that "this ordinance shall take effect from its passage and shall continue for and during the term of the charter of said railroad company," limited the franchise to the life of the grantee and that as under *Shields* v. *The State,* 26 Ohio St., 86 *supra,* the legal effect of the consolidation of certain of the grantee corporations was to dissolve them and extinguish their charters, such franchises ended with the consolidation. On the other hand it is contended that the grant being for the term of the charter is in perpetuity because the legal effect of the grant of a charter without limitation as to time is to grant in perpetuity. It is expressly provided by Section 23 of the act (S. & C., 281) authorizing the consolidation, that upon the election of the first board of directors of the new company "all and singular of rights and franchises of each and all

of said two or more corporations, parties to such agreement, all and singular their rights and interest in and to every species of property, real, personal and mixed, and things in action, shall be deemed to be transferred to and vested in such new corporation, without any other deed or transfer; and such new corporation shall hold and enjoy the same, together with the right of way, and all other rights of property, in the same manner, and to the same extent, as if the said two or more corporations, parties to such agreement, should have continued to retain the title, and transact the business of such corporations."

The very purpose of the act would be defeated if the effect of the consolidation was to strip the new company of the right to exercise its franchise and so to accomplish the object of its creation and if the contention of relator is sound it would follow that the legal effect of the consolidation was to grant a new and unlimited franchise or to waive the limitation, for there can be no question of the power of the state either to grant a franchise or to waive conditions or limitations imposed by its agent.

It is contended also that in some of the ordinances consenting to double tracks it is provided "that nothing in this ordinance shall in any wise work an extension of the charter of said railway company," and that this is an admission by the company that its franchise is not perpetual; that several ordinances passed subsequently to 1878 repealed former ordinances and made new agreements, and that by the acceptances of the latter ordinances the company gave up all rights under the former ordinances and that as the latter ordinances were passed subsequently to 1878, the limitation of twenty-five years contained in the act of that year applies, and that contention is made also in respect to ordinances making new or additional agreements, but not expressly repealing former ordinances.

These contentions have given us much trouble because counsel refer to ordinances we are unable to find, either attached as exhibits to the pleadings or in the agreed statement of facts; however the alleged admission by the company is immaterial, for it is neither averred nor shown that the action of the city was in any instance procured or influenced by the alleged admission, and as to

174 CIRCUIT COURT REPORTS—NEW SERIES.

Cleveland T. & V. R. R. Co. v. City of Akron. [Vol. I, N. S.

the other contentions if they are good, then they concede that by the new agreements or ordinances consent was given for twenty-five years, and a present right to occupy the streets and when a right presently to occupy the streets is conceded, we do not consider or determine the moot question of its possible duration.

As to the ordinances authorizing the substitution of electrical power, we may say in the words of Mr. Justice Brown in *City Ry. Co.* v. *Citizens' Street R. R. Co.,* 166 U. S. 557-569:

"There is nothing in the so-called electrical ordinance which affects this question."

Being of the opinion, therefore, that the defendant has a present right to occupy the streets, the petition is dismissed (*State, ex rel,* v. *The City of Newark,* 57 O. S., 430).

E. L. Taylor, Jr., Pugh & Pugh, M. B. Earnhart, M. E. Thrailkill, for relator.

R. A. Harrison, H. J. Booth, James Watson, for defendant.