# CITY RAILWAY COMPANY *v.* CITIZENS' STREET RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 214. Argued March 16, 17, 1897.—Decided April 19, 1897.

The Citizens' Street Railway Company of Indianapolis was organized in 1864 under an act of the legislature of Indiana of 1861, authorizing such a company to be " a body politic and corporation in perpetuity." January 18, 1864, the common council of that city passed an ordinance authorizing the company to lay tracks upon designated streets, and providing that " the right to operate said railway shall extend to the full time of thirty years," during which time the city authorities were not to extend to other companies privileges which would impair or destroy the rights

so granted. In April, 1880, the common council amended the original grant "so as to read thirty-seven years where the same now reads thirty years." The company, desiring to issue bonds to run for a longer period than the thirty years, had, for that purpose, petitioned the common council for an extension to forty-five years. The city government was willing to extend to thirty-seven years, and this was accepted by the company as a compromise. On the 23d of April, 1888, the road and franchises were sold and conveyed to the Citizens' Street Railroad Company, which sale and transfer were duly approved by the city government. December 18, 1889, a further ordinance authorized the use of electric power by the company, and provided how it should be applied. In accordance with its provisions the company, at great expense, built a power house, and changed its plant to an electric system. In April, 1893, the city council, claiming that the rights of the company would expire in thirty years from January 18, 1864, granted to another corporation called the City Railway Company the right to lay tracks to be operated by electricity in a large number of streets then occupied by the tracks of the Citizens' Street Railroad Company, whereupon a bill was filed in the Circuit Court of the United States by the Street Railroad Company against the City Railway Company, to enjoin it from interrupting or disturbing the railroad company in the maintenance and operation of its car system, alleging that the action of the city council sought to impair, annul and destroy the obligation of the city's contract with the plaintiff. *Held,*

(1) That the Circuit Court had jurisdiction, although both parties were corporations and citizens of Indiana;

(2) That the right of repeal reserved to the legislature in the act of 1861 was not delegated to the city government;

(3) That the circumstances connected with the passage of the amended ordinance of April 7, 1880, operated to estop the city from denying that the charter was extended to thirty-seven years;

(4) That the continued operation of the road was a sufficient consideration for the extension of the franchise;

(5) That the Citizens' company had a valid contract with the city which would not expire until January 18, 1901, and that the contract of April 24, 1893, with the City Railway Company was invalid;

(6) But no opinion was expressed whether complainant was entitled to a perpetual franchise from the city.

THIS was a bill in equity by the Citizens' Street Railroad Company to enjoin the appellant from interrupting or disturbing complainant in the construction, operation and maintenance of its street car system in the city of Indianapolis, and for the establishment of complainant's rights and the quieting of its title in that connection.

The facts of the case are substantially as follows: In 1861,

the general assembly of the State of Indiana passed an act authorizing the incorporation of street railway companies, the second section of which act provided that the stockholders in such companies, and their successors, should be "a body politic and corporate *in perpetuity*, by the name stated in the articles of association"; and the eleventh and twelfth sections of which were as follows:

"SEC. 11. This act may be amended or repealed at the discretion of the legislature.

"SEC. 12. Nothing in this act contained shall be so construed as to take away from the common councils of incorporated cities the exclusive powers now exercised over the streets highways, alleys and bridges within the corporate limits of such cities; and all, street railroad companies which may be organized under the provisions of this act shall first obtain the consent of such common council to the location, survey and construction of any street railroad through or across the public streets of any city before the construction of the same shall be commenced."

Pursuant to this act, the Citizens' Street Railway Company was organized January 15, 1864, and on January 18, 1864, the common council of Indianapolis passed an ordinance, the first, third and fifteenth sections of which contained the following:

"SECTION 1. *Be it ordained by the common council of the city of Indianapolis*, That under and by virtue of an act of the general assembly of the State of Indiana, entitled, 'An act to provide for the incorporation of street railroad companies,' approved June 4, 1861; and by virtue of the powers and authority of the common council otherwise by law vested, consent, permission and authority are hereby given, granted and duly vested unto the company organized with R. B. Catherwood as president, a body politic and corporate by the name of the Citizens' Street Railway Company of Indianapolis, and their successors, to lay a single or double track for passenger railway lines, with all the necessary and convenient tracks for turnouts, side tracks and switches, in, upon and along the course of the streets and alleys of the city of Indianapolis hereinafter mentioned; and to keep, maintain, use

and operate thereon railway cars and'carriages in the manner and for the *time* and upon the conditions hereinafter prescribed."

" SEC: 3. The cars to be used on such tracks shall be operated with animal power only. . . ."

" SEC. 15. The right to operate said railway shall extend to the full time of thirty years from the passage hereof; and the said city of Indianapolis shall not, during all the time to which the privileges hereby granted to said company shall extend, grant to or confer upon any person or corporation any privilege which will impair or destroy the rights and privileges herein granted to the said company. . . ."

The second section of this ordinance named certain streets upon which the company was authorized to lay its tracks, and in the following year (1865) a supplemental ordinance was passed giving to the company the right to lay its tracks upon all the streets or roads within the corporate limits of the city, and providing, in section 4, " that in laying, constructing and operating" the same, the company should be governed by the provisions of the ordinance of January 18, 1864.

The Citizens' Street Rail*way* Company constructed and operated its plant until April 23, 1888, when it was sold and conveyed to the complainant, the Citizens' Street Rail*road* Company.

On April 7, 1880, the common council passed another ordinance supplemental to that of 1864, providing that section 15 of that ordinance should be amended so as " to read thirty-seven years, where the same now reads thirty."

On April 23, 1888, an ordinance was passed approving the sale and transfer of the railway company to the railroad company, and on December 18, 1889, a further ordinance was passed, supplementary to that of January 18, 1864, authorizing the use of electric power, and providing the manner in which it should be applied. This ordinance was formally accepted by the railroad company on January 4, 1890. The company thereupon proceeded at very great expense to build a power house and change its plant to an electric system.

In 1893 a dispute arose between the board of public works

of the city and the president and directors of the complainant over the question whether complainant's franchise would expire on January 18, 1894, thirty years from its date.

On February 6, 1893, a further ordinance was passed declaring it to be unlawful for any person or corporation to cut or dig into a paved street without first obtaining from the board of public works a written permit so to do.

On April 24, 1893, pursuant to an act of the general assembly of the State quoted in the opinion, the city, through its board of public works, entered into a contract with the defendant — the City Railway Company — giving it permission to lay its tracks for street railway lines to be operated by electricity, or other improved power, through a large number of streets, most of which were already occupied by the lines of the complainant company. This contract was approved upon the same day by the common council, and was accepted by the defendant.

The bill averred that it was impossible that electric cars, other than complainant's, could be operated on such streets without their practical destruction as thoroughfares for public travel. It further set forth certain acts on the part of the city, which are alleged to be part of a plan of the city authorities, in combination with the defendant, to prevent it from making extensions and improvements and from operating its lines of railway; and that they, the city and the defendant, were asserting the right of the city to disregard and set aside, by the exercise of the legislative power conferred upon its common council by the legislature of the State in the charter of 1891, a contract duly entered into and existing between the State and the complainant under its charter, and between the city and the complainant, thereby seeking to impair, annul and destroy the obligation of such contracts in violation of the Constitution of the United States. This bill was filed on May 11, 1893, within a month after the contract and ordinance of April 24.

A motion was made to dismiss the bill upon the ground of the want of jurisdiction in the Circuit Court, which was denied. 56 Fed. Rep. 746. The bill was subsequently amended, and

the case being put at issue upon an answer and replication, came on to be heard upon the pleadings and proofs, and resulted in a decree, in accordance with the prayer of the bill and the opinion of the presiding judge, forever enjoining the defendant from disturbing the complainant in the enjoyment of its rights to the streets, occupied by it at the time of the commencement of the suit, and declaring the contract and ordinance of April 24, 1893, to be void, in so far as they attempted to confer upon the defendant company any right to the streets occupied by the complainant at the commencement of the suit. 64 Fed. Rep. 647. From this decree an appeal was taken to this court.

*Mr. Addison C. Harris* for appellant.

*Mr. P. C. Knox* and *Mr. Benjamin Harrison* for appellee. *Mr. W. H. H. Miller, Mr. F. Winter* and *Mr. John B. Elam* were on their brief.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This case involves the right of the Citizens' Street Railroad Company of Indianapolis to operate a street railroad upon the streets upon which it had constructed its tracks at the commencement of this suit, as well as the validity of a certain contract, and ordinance ratifying the same, between the city and the City Railway Company, in so far as the city attempted to confer upon that company a right to lay its tracks upon the streets already occupied by the complainant, or to abridge its rights in the use of such streets.

1. There can be no doubt that the Circuit Court had jurisdiction of the case, notwithstanding the fact that both parties are corporations and citizens of the State of Indiana. It should be borne in mind in this connection that jurisdiction depended upon the allegations of the bill, and not upon the facts as they subsequently turned out to be. The gravamen of the bill is that, under the act of the general assembly of

1861, and the ordinances of January 18, 1864, and April 7, 1880, the Citizens' Railroad Company had become vested with certain exclusive rights to operate a street railway in the city of Indianapolis, either in perpetuity or for the term of thirty years or thirty-seven years, which the city had attempted to impair by entering into a contract with the City Railway Company to lay and operate a railway upon the same streets.

All that is necessary to establish the jurisdiction of the court is to show that the complainant had, or claimed in good faith to have, a contract with the city, which the latter had attempted to impair. Conceding that the legislature of the State alone had the right to make such grant, "it may," as was observed in *Wright* v. *Nagle*, 101 U. S. 791, 794, "exercise its authority by direct legislation, or through agencies duly established, having power for that purpose. The grant, when made, binds the public, and is directly or indirectly the act of the State. The easement is a legislative grant, whether made directly by the legislature itself or by any one of its properly constituted instrumentalities." "The complainants claim," as in the case under consideration, "they have such a grant through the agency of the inferior court, acting under the authority of the legislature." See, also, *Saginaw Gas-Light Co.* v. *Saginaw City*, 28 Fed. Rep. 529; *Weston* v. *Charleston*, 2 Pet. 462; *New Orleans Water Works Co.* v. *Rivers*, 115 U. S. 674.

That the complainant had a contract with the city is entirely clear. It was so held by the Supreme Court of Indiana in the *Western Paving & Supply Co.* v. *Citizens' Street Railroad Co.*, 128 Indiana, 525, in which the liability of the company for certain street improvements was discussed and passed upon. It is true that, by section eleven of the original act of 1861, a right was reserved to the general assembly to amend or repeal at their discretion the act authorizing the incorporation of street railway companies; but that was a right reserved to the general assembly itself and was never delegated, if in fact it could be delegated, to the common council of the city.

That the city did attempt to impair this contract by the

agreement of April 24, 1893, with the City Railway Company, and its ordinance ratifying the same, is equally clear. This contract was entered into in pursuance of a supposed right given by the act of the general assembly of March 6, 1891, known as the City Charter, the fifty-ninth section of which enacted that "the board of public works shall have power . . . to authorize and empower by contract telephone, telegraph, electric light, gas, water, steam, or street car or railroad companies to use any street, alley or other public place in such city; . . . provided, that such contracts shall, in all cases, be submitted by said board to the council of such city, and approved by them by ordinance before the same shall take effect." This contract and ordinance of April 24, 1893, even if otherwise valid, could not be construed to interfere with the rights of the complainant to occupy the streets of the city under the act of 1861, and the ordinance of January 18, 1864, without coming in conflict with that provision of the Constitution which forbids States from enacting laws impairing the obligation of contracts. Whether the State had or had not impaired the obligation of this contract was not a question which could be properly passed upon, on a motion to dismiss, so long as the complainant claimed in its bill that it had that effect, and such claim was apparently made in good faith, and was not a frivolous one. *New Orleans* v. *New Orleans Water Co.*, 142 U. S. 79, 88.

Even if the charter were held to have expired on January 18, 1894, — thirty years from its date, — it would not have necessarily affected the jurisdiction of the court to entertain this bill, since it was filed eight months before that time, although it might have affected the right of the complainant to a decree.

Did the act of 1891, known as the new charter, repeal the act of 1861 authorizing the incorporation of railway companies? In other words, should it be construed as an exercise of the power, reserved to the State in the eleventh section of the act of 1861, to amend or repeal that act at the discretion of the legislature? As the act of 1891 practically established a new system and vested the whole power of the legislature

over street railway companies in the board of public works of the several cities therein named, subject to the approval of the common council of such cities, perhaps it might be construed to repeal the former, so far as there was a conflict between the two acts; but it certainly should not be construed to act retrospectively or to affect contracts entered into prior to its passage, unless its language be so clear as to admit of no other construction. While it was doubtless intended to authorize the board of public works of the cities covered by the act to contract for the use of their streets by railway companies, there is nothing from which can be inferred a power to disturb or interfere with contracts already existing — indeed, it is highly improbable that it would ever have delegated such a power to a subordinate body. There is always a presumption that statutes are intended to operate prospectively only, *Shreveport* v. *Cole*, 129 U. S. 39, and we see nothing in this statute to rebut such presumption.

2. In arguing the case upon the merits, complainant insisted with great earnestness that inasmuch as the act of 1861, providing for the incorporation of street railway companies, had declared, in section two, that the stockholders in the companies organized under that act, and their successors, should be " a body politic and corporate in perpetuity, by the name stated in the articles of association," the common council of Indianapolis, which by section twelve must have given its consent "to the location, survey and construction " of any street railway before the construction of the same could be commenced, had no power in its ordinance of January 18, 1864, to limit the right of the complainant to operate its railway to the term of thirty years; and that such ordinance, though valid, in so far as it gave consent to build and operate the railway, was invalid, in so far as it attempted to abridge the franchise granted by the general assembly, which existed in perpetuity. We do not, however, find it necessary to express an opinion upon this question, in view of the conclusion we have reached upon the legality of the ordinance of April 7, 1880, amending section fifteen of the original ordinance by extending complainant's franchise from thirty to thirty-seven years.

No question was made respecting the validity of the original ordinance, but the amended ordinance of April 7, 1880, was attacked, principally upon the ground of a want of consideration for the extension of the franchise for seven years. The facts connected with this amendment were substantially as follows: The railway being mortgaged for $200,000, in first mortgage bonds and $100,000 in second mortgage bonds at seven per cent interest, at the time of the purchase by the railroad company, the company was desirous of paying them off, as they were at liberty to do under the mortgages, and of renewing the loan in one mortgage at a lower rate of interest. In negotiating with the proposed purchasers of the bonds it was insisted that the contract with the city ought to be extended, as the proposed new issue of bonds would run beyond the time fixed for the termination of the contract. The manager of the road thereupon applied to the common council for an ordinance amending section fifteen of the original ordinance, by making it read forty-five years instead of thirty years. The committee declined to agree to this, but recommended as a compromise an ordinance fixing the term of the original ordinance at thirty-seven years instead of forty-five years. To this the company finally agreed. Thereupon the common council adopted the ordinance in question.

While this transaction cannot properly be termed a legal consideration for the ordinance, since the negotiation of the new loan was neither a benefit to the city nor a detriment to the railway company, yet we think that the subsequent negotiation of the loan operates against the city by way of estoppel. All that is necessary to create an estoppel *in pais* is to show that, upon the faith of a certain action on the part of the city, which it had power to take, the company incurred a new liability; as, for example, by the negotiation of a new loan, and the issue of a new bond and mortgage to secure the same. Under such circumstances, justice to the bondholders, who have in good faith invested their money in reliance upon the validity of such action, demands that the city shall be held to its contract, notwithstanding there may have been originally no consideration to support it. The consequences

of a different ruling would not only destroy the credit of the company, but might be disastrous to the bondholders, the value of whose investment would depend very largely upon the length of time the bonds were to run. Experience shows that the value of bonds or debentures depends not only upon the sufficiency of the security and the rate of interest, but upon the length of time they have to run and the certainty that they will not, before the expiration of such time, be called in for redemption.

But however this may be, it seems to us that the continued operation of the road may itself be regarded a sufficient consideration for the extension of the franchise. This extension was not a mere gratuity or bounty within the case of *Grand Lodge* v. *City of New Orleans*, 166 U. S. 143, recently decided, but was an agreement to prolong the privilege of occupying the streets of the city, in consideration that the company should continue the facilities already afforded to its citizens. The original ordinance of January 18, 1864, was plainly a proposition on the part of the city to grant to the company the use of its streets for thirty years, in consideration that the company lay its tracks and operate a railway thereon upon certain conditions prescribed by the ordinance. This proposition, when accepted by the company and the road built and operated as specified, became a contract which the State was not at liberty to impair during its continuance; but if, at the expiration of the thirty years, the road had been sold to another company, and that company had applied for and obtained from the common council a franchise to occupy its streets for another period, it seems to be clear that such a contract would need no other consideration to support it than the continued operation of the road under such conditions as the city chose to impose. But this is practically such a case, since it makes no difference in principle whether the road passes into the hands of a new company or is retained by the old one, or whether the extension is granted at the time of or before the original franchise expired. In either case the consideration, viz., the continued operation of the road, is the same. If, instead of extending the original ordinance this ordinance had been surrendered by the com-

pany, and a new one had been enacted by which the franchise was extended, it would hardly be contended that the continued operation of the road would not be a sufficient consideration for the new ordinance. This was, in reality, part of the consideration upon which the original franchise was granted, and is, we think, a valuable consideration within the meaning of the law, and sufficient to support the extension.

This ordinance is also attacked upon the ground that it was never formally accepted by the company. There is really nothing in this contention. No formal resolution of acceptance is necessary in any case, if the facts show an actual, practical acceptance by the company, or action which would be only explicable in case the amendment were accepted. There are two circumstances in this case, either of which is sufficient to constitute an acceptance.

Mr. Johnson, the manager of the road, who desired the extension of the charter, applied for an amendment making the original section fifteen read forty-five years instead of thirty years, and in that connection says: "After a good deal of argument I was finally forced to concede to the wishes of the committee, and they recommended to the council an ordinance making it read 'thirty-seven years,' instead of the 'forty-five' we applied for. This ordinance we consented to in committee, and afterwards agreed to with the council, as the best we could do under the circumstances." This was sufficient, as it is universally held that a previous request for an ordinance obviates the necessity of a subsequent acceptance. *Atlanta* v. *Gate City Gas-Light Co.*, 71 Georgia, 106; 1 Morawetz on Corporations, § 23; *Illinois River Railroad Co.* v. *Zimmer*, 20 Illinois, 654; *Lincoln & Kennebec Bank* v. *Richardson*, 1 Maine, 79; *State* v. *Dawson*, 22 Indiana, 272; *Newton* v. *Carbery*, 5 Cranch C. C. 632; *Perkins* v. *Sanders*, 56 Mississippi, 733, 739.

We are also of opinion that an acceptance may be presumed from the fact that the amendment was beneficial to the corporation, *United States* v. *Dandridge*, 12 Wheat. 64, 70; *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 344; *Commonwealth* v. *Cullen*, 13 Penn. St. 133, 140; *Bangor, Old Town & Milford Railroad* v. *Smith*, 47 Maine, 34, and from the further

fact that it issued its bonds, as was contemplated when the ordinance was applied for, and made them fall due at the expiration of the enlarged franchise.

There is nothing in the so-called electrical ordinance which affects this question. It seems that in December, 1889, the common council adopted an ordinance amendatory of the original ordinance of January 18, 1864, to the effect that "the cars to be used on such tracks shall be operated with animal or electrical power only." The ordinance further provided that "nothing herein contained shall be construed so as to lengthen the term of the franchise, enlarge or in any other way change or affect the rights of the Citizens' Street Railroad Company of the city of Indianapolis, under said ordinance of January 18, 1864, except to authorize the use of electrical as well as animal power."

It was also provided that the appellee should signify its acceptance by writing, within sixty days, filed with the city clerk, which was done.

At this time there was no law of the State permitting electricity to be used, and it is now claimed that the common council exceeded its powers in authorizing this change to be made.

But it seems that on March 3, 1891, a law was enacted by the general assembly, declaring "that any street or horse railroad heretofore or hereafter organized . . . may, with consent of the common council of the city . . . use electricity for motive power." Conceding, although not deciding, that the city might have exceeded its lawful power in authorizing the change from animal power to electricity, in the absence of legislative authority so to do, we think the act of 1891 should be construed, not only as conferring a new authority upon the city, but as a ratification of what the city had already done in that direction. In view of the large expenditures incurred by the company upon the faith of this ordinance, it is ill becoming the city to set up its own want of power to make it, when such power was directly and explicitly given a few months thereafter.

The fact that the ordinance declared that it should not be

so construed as to lengthen the term of the franchise under the ordinance of January 18, 1864, is wholly immaterial, since the ordinance had been amended, changing the original limitation of time from thirty to thirty-seven years. In fact, the ordinance had but a single object, which was to permit the substitution of electric for animal power, and it is scarcely possible that, if either party had understood that the franchise was to expire in January, 1894, four years from the time the electric ordinance was adopted, the complainant company would have entered upon the work of changing its entire system of street railway into an electrical system, and incurred the very large expense necessary for that purpose, knowing that before it could reap any substantial return from such an investment its rights in the streets of the city would expire by limitation. The improbability becomes the more apparent when it is considered that it was under no compulsion to make the change, and might, at its option, have continued the use of horse power until the original franchise had expired.

We are, therefore, of opinion that the complainant company had a valid contract with the city, under the original ordinance of January 18, 1864, as amended by the ordinance of April 7, 1880, which will not expire until January 18, 1901, and that the contract and ordinance of April 24, 1893, with the defendant company is invalid, in so far as it may be construed to interfere with the complainant in the construction, operation and maintenance of its street car system in the city of Indianapolis. But as we are not called upon to express an opinion whether complainant is entitled to a perpetual franchise from the city,

*The decree of the court below must be modified by striking out from the second paragraph the words " without regard to any limitation of time mentioned in any ordinance of the city," and, also, the word "forever," and as so modified it is affirmed.*

Mr. Justice Gray and Mr. Justice White concurred in the result.

Mr. Justice Shiras was of opinion that the decree should be affirmed without modification.

Mr. Justice Harlan did not hear the argument or participate in the decision of this case.