## PORTLAND RY., LIGHT & POWER CO. v. CITY OF PORTLAND et al.

(District Court, D. Oregon.   November 25, 1912.)

No. 5,722.

**1. COURTS (§ 282*)—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.**

A federal court has jurisdiction of a suit to enjoin the enforcement of a municipal ordinance alleged to impair the obligation of a prior contract made by the city and which was passed under assumed and asserted legislative authority.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820–824; Dec. Dec. Dig. § 282.*

Jurisdiction of federal courts in cases involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Mining Co., 35 C. C. A. 7; Earnhart v. Switzler, 105 C. C. A. 262.]

**2. CARRIERS (§ 12*)—REGULATION OF RATES—POWERS.**

The right to reasonably regulate rates to be charged by a public service corporation, as a street railroad company, is a governmental power continuing in its nature, and, while it may be suspended in a given case by a contract for a definite time not unreasonably long, it can only be done by words of positive grant or language equivalent thereto, and then only by the supreme legislative body of the state unless authority is clearly delegated by such body.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

**3. CARRIERS (§ 12*)—REGULATION OF RATES—POWERS OF CITY.**

Under the provision of the charter of the city of Portland, Or., authorizing the council to grant for a limited time specific franchises in the

streets, etc., but providing that "at all times the power and right reasonably to regulate in the public interest the exercise of the franchise or right so granted shall remain and be vested in the council and said power and right cannot be divested or granted," the further provision, that every grant of such a franchise which provides for the charging of rates, fares, and charges for services rendered or performed by the grantee shall fix a maximum rate which may be charged during the life of such franchise, does not vest the city with power to contract away its right to regulate the fares which may be charged by a street railroad company.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

4. CONSTITUTIONAL LAW (§ 134*)—OBLIGATION OF CONTRACTS—CONTRACTS OF MUNICIPALITY—FRANCHISE TO USE STREETS.

The grant by a municipality of the right to use streets for a reasonable time for street railroad purposes becomes, when accepted by the grantee and the railway is built, a contract which neither the state nor any of its agencies may impair.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 344; Dec. Dig. § 134.*]

5. INJUNCTION (§ 112*)—RESTRAINING ENFORCEMENT OF ORDINANCE—TIME FOR ACTION.

A federal court has jurisdiction of a suit to enjoin the enforcement of an ordinance which impairs the obligation of a contract without waiting until proceedings are instituted for its enforcement.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 197; Dec. Dig. § 112.*]

6. CARRIERS (§§ 2, 12*)—CONSTITUTIONAL LAW (§ 298*)—ORDINANCE REGULATING FARES—CONSTITUTIONALITY.

A city ordinance requiring street railroad companies operating their lines under franchises granted by the city to provide registers in each car on which the conductor shall ring up the fares collected, providing that, "when the number of fares received equals the seating capacity of the car of two feet for each passenger," the conductor shall only be allowed to charge three cents for each passenger admitted, instead of the regular fare of five cents, that any car shall receive passengers to the extent of the standing room therein, and that for its willful violation for the period of one month the council may declare the franchise of the company forfeited and remove its tracks from the streets, without providing for any hearing or judicial determination of its rights, is unconstitutional and void not only as an impairment of the contract made by a company's franchise and depriving it of its property without due process of law, but as uncertain and unreasonable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 4, 5, 7–20; Dec. Dig. §§ 2, 12;* Constitutional Law, Cent. Dig. § 847; Dec. Dig. § 298.*]

In Equity. Suit by the Portland Railway, Light & Power Company against the City of Portland, Frank S. Grant, City Attorney, and E. A. Slover, Chief of Police of said City. On motion for preliminary injunction. Motion granted.

F. V. Holman and Franklin T. Griffith, both of Portland, Or., for complainant.

Frank S. Grant, City Atty., and L. E. Latourette, Deputy City Atty., both of Portland, Or., for defendants.

Before WOLVERTON and BEAN, District Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BEAN, District Judge.   This suit is brought to enjoin the defendant city and its officers and agents from enforcing as against the complainant ordinance No. 25683, enacted by its city council August 14, 1912, and which reads as follows:

"An ordinance providing for a reduced fare on street cars where no seats are provided for passengers, and providing for a penalty for the violation thereof.

"The city of Portland does ordain as follows:

"Section 1.   That there shall be placed above the entrance of every street car or car operated as a street car within the city of Portland, in large letters, words and figures indicating the seating capacity of the car.

"Sec. 2. The conductor or other person in charge of the car shall ring up in plain sight of the occupants of the car the number of fares received.   When the number of fares received equals the seating capacity of the car of two feet for each passenger as indicated on its entrance, then the conductor or person who collects the fares shall only be allowed to charge or receive three cents for each passenger admitted, for a full fare ride, and it shall be unlawful for any street car company to accept or receive any greater sum than three cents for any person admitted to the car in excess of its seating capacity.

"Sec. 3. Any street car may be permitted to receive and it is required to receive passengers to the extent of the standing room of the car.   If the number of passengers in the car falls below its seating capacity, any person standing and who may have paid a three-cent fare may take a seat vacated by other passengers without an extra charge.

"Sec. 4.  Persons paying only a three-cent fare as above set forth are entitled to all the transfers and other privileges of a regular fare as herein limited.

"Sec. 5.  Any person or company operating street cars in the city of Portland is hereby required to issue and keep on sale tickets in pads of 100 or more, printed in such a way that two and a half cents shall be sufficient for a standing room fare.   The selling price of such pads of 100 two and a half cent fares shall not exceed $2.50.   Such pads shall be so printed that two of such standing room tickets may be received for a full fare with seat.   Said company or persons operating street cars in the city shall immediately upon the taking effect of this ordinance, issue and keep on sale such tickets.

"Sec. 6.  Any person, firm or corporation violating any of the provisions of this ordinance, shall upon conviction in the municipal court be punished by a fine of not more than $500.00 or imprisonment of not more than six months. It shall also be lawful in case the provisions of this ordinance are willfully violated for a period of one month after the passage of this ordinance for the council of said city of Portland to declare the franchise of the company violating the ordinance forfeited, and to remove its tracks from the streets. Said forfeiture herein provided for may be imposed in lieu of the fine and imprisonment herein provided for, at the option of the council."

In December, 1902, the Oregon Water Power Company owned and was operating street railways in the city of Portland, under municipal franchises, and at that time the city passed and the Power Company accepted a new ordinance granting to it a franchise over additional streets, which provided that the grantee and its successors and assigns "may charge and collect from each passenger traveling upon its railways a fare of five cents, and no more, for traveling each continuous trip in any one direction within the limits of the city of Portland over the line of railway constructed by authority of this ordinance, and its other lines of railway within the limits of said city."

On November 24, 1902, the Portland Railway Company was the owner of certain franchises under which it was operating street railways in the city of Portland, and on the day named the city passed,

and the company accepted, an ordinance repealing all former franchises and granting a new one over certain designated streets, and which provided that the grantee or its successors and assigns "may charge and collect from each passenger traveling upon its railways for each trip traveled by such passenger in one general direction upon the railways authorized by section 1 of this ordinance within the limits of the city of Portland a fare of five cents and no more; excepting that for riding in or the use of observation cars, funeral cars, mail cars, express cars, freight cars, party cars, and other special cars said railway company, its successors and assigns, may charge and collect such compensation, rates and fares as it or they may desire."

On January 9, 1903, the City & Suburban Railway Company was the owner of a street railway system and was operating the same under previously granted franchises covering certain designated streets, and on that day an ordinance was adopted repealing former franchises and grant'ng to the company a new one which contained a provision in reference to fares similar to that in the ordinance of November 24, 1902, to the Portland Railway Company.

At the time of the passage of these several ordinances, the city had authority to "provide for and allow the laying down of tracks for street cars and other railways upon such street or streets as the counci. may designate" (Laws 1898, Special Session, p. 114), but no authority to enter into a contract with the grantee of such franchise fixing the rate of fares to be charged by such grantee, nor did it have specific authority to regulate such charges.

On the 23d of January, 1903, the present charter of the city of Portland was approved by the Governor. It contains a provision that:

"Nothing in this charter contained shall affect the validity of any franchise, right or privilege in actual use or enjoyment heretofore given or granted by any former or the present city of Portland, or by the city of East Portland or by the city of Albina, and the same shall be and continue in force and effect as given or granted by said cities or either of them." Special Laws 1903, p. 52.

After the adoption of the present charter and prior to 1909, the complainant herein became the owner by purchase or otherwise of the several franchises heretofore referred to and the railways being operated thereunder. In order that it might operate its lines as one system, the city council passed, and the complainant accepted, in April of that year, a new ordinance (No. 19176) granting to it additional franchises over streets and parts of streets so as to enable it to connect its tracks, which ordinance provides (section 12):

"The railway company, its successors and assigns, may charge and collect from each passenger traveling upon its railways or street railways for each trip traveled by such passenger in one general direction, wholly within the city of Portland, on the railways or street railways of the railway company, its successors and assigns, including railways and street railways constructed on the streets or parts thereof, authorized by section 1 of this ordinance, a fare or five cents (5¢) and no more, except that for passengers traveling in observation cars the railway company may charge and collect from each passenger a fare not exceeding fifty cents (50¢) per trip. The railway company, its successors and assigns, may charge and collect for the use of funeral cars,

mail cars, express cars, freight cars, party cars and other special cars, a sum not exceeding ten dollars ($10.00) per hour for each of such cars."

And that:

"This ordinance and the franchise herein contained is granted subject to all the terms, provisions and ·conditions contained in the charter of the city of Portland and applicable thereto in the same manner and to the same 'extent as if each and every of said terms, provisions and conditions were expressly set out and incorporated herein." Section 19.

And also:

"The power and right at all times to reasonably regulate in the public interest the exercise of the rights and privileges granted by this franchise shall be and remain vested in the council of the city of Portland." Section 21.

At the time of the granting of such franchise, the following provisions of the city charter were in force:

"Sec. 94. The council may, subject to the limitations and conditions contained in this charter, grant for a limited time specific franchises or rights in or to any of the public property or places mentioned in the preceding sections (streets, alleys, highways, etc.). Every such grant shall specifically set forth and define the nature, extent and duration of the franchise or right thereby granted, and no franchise or right shall pass by implication. At all times the power and right reasonably to regulate in the public interest the exercise of the franchise or right so granted shall remain and be vested in the council, and said power and right cannot be divested or granted."

"Sec. 105. The council of the city of Portland shall have at all times power to regulate by ordinance, street railroads, tramways and other railroads and the use of tracks and cars, etc."

"Sec. 112. Every grant of a franchise which provides for the charging of rates, fares and charges shall contain a provision fixing the maximum rate of fares, rates and charges which the grantee, his, its or their successors or assigns can charge or collect for services rendered or performed by virtue of and during the life of such franchise and the operation of his or its plant or property thereunder; and said grant may also or in addition provide that the council reserve the right to thereafter from time to time, change, alter, regulate and fix fares, rates or charges which the grantee, his, its or their successors or assigns, can charge or collect thereunder during the life of such grant or franchise."

The jurisdiction of this court is invoked solely on the ground that the controversy is one arising under the Constitution of the United States. Diversity of citizenship does not exist between the parties.

The complainant contends: (1) That the ordinance of August 14, 1912, prescribing the fares which·it shall charge and collect, is violative of a contract between it and the city, embodied in franchise ordinance No. 19176, by which it is entitled to charge during the life of the franchise a fare of five cents for each passenger carried, and is therefore invalid under section 10, article 1, of the Constitution of the United States, prohibiting the state from passing· any law impairing the obligation of a contract. And (2) that the ordinance granting it a franchise to occupy the streets of the city with its railway lines and the acceptance thereof constitutes a vested right for the life of the franchise, of which it cannot be deprived without just compensation, and that the provisions of the ordinance challenged providing a forfeiture of the franchise in case of a violation thereof is an attempt to deprive it of its property without due process of law, in violation of the

fourteenth amendment to the federal Constitution. And (3) that the enforcement of the ordinance will deprive it of its property without due process of law, denies it the equal protection of the law, and compels it to illegally discriminate between passengers, contrary to the federal Constitution.

The jurisdiction of the court is challenged by one of the officers of the city who is made a defendant, on the ground that the complainant contended at the hearing that the city had no power or authority to fix or regulate fares to be charged by public service corporations.

[1] It is settled law that a municipal ordinance not passed under legislative authority cannot be regarded as a law of the state within the meaning of the constitutional prohibition against the state impairing the obligations of a contract. Seattle El. Co. v. Seattle R. & S. Co., 185 Fed. 365–370, 107 C. C. A. 421; San Francisco v. United. R., 190 Fed. 507, 111 C. C. A. 339. But no such case is made by the bill. It contains an averment that the ordinance, the enforcement of which is sought to be enjoined, is void as to the complainant, not, however, because the city had no general power or authority to legislate upon the subject, but because it impairs the obligations of a contract between the complainant and the city, and if enforced will deprive the complainant of its property without due process of law and deny it the equal protection of the law. There is no averment that the city was without authority to pass an ordinance of that kind. Furthermore, the city has answered, setting up various provisions of the charter under which it assumed to act in adopting such ordinance, and claiming and insisting that it has ample authority to enact the same. The ordinance was passed and is sought to be enforced under assumed and asserted legislative authority. A federal question is therefore presented by the record, over which the court has jurisdiction and which it is bound to decide. Hamilton Gaslight Co. v. City, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963; Cleveland v. Cleveland Ry. Co., 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102; Siler v. Louisville & N. R., 213 U. S. 175, 29 Sup. Ct. 451, 53 L. Ed. 753; City R. Co. v. Citizens' R., 166 U. S. 557–561, 17 Sup. Ct. 653, 41 L. Ed. 1114; Vicksburg Waterworks Co. v. Vicksburg, 185 U. S. 65, 22 Sup. Ct. 585, 46 L. Ed. 808.

On the first branch of the case, the questions are: (1) Had the city of Portland at the time of the passage of ordinance No. 19176 legislative authority to contract away for the life of the franchise the governmental right of fixing fares; and (2) has it done so? If the first question is answered in the negative, the other necessarily becomes immaterial, for if the city had no authority to grant the complainant immunity by contract from the right of the state, in the exercise of its governmental powers, to reasonably fix rates for the carriage of passengers over its line, this court should not assume to inquire whether the state has in fact delegated to the city the power to fix rates. Mills v. Chicago (C. C.) 127 Fed. 731; New Orleans v. Waterworks, 142 U. S. 79, 12 Sup. Ct. 142, 35 L. Ed. 943.

[2] A large number of decisions have been cited and commented upon by counsel. They have all been carefully examined. It is need-

less to refer to them in detail, for, as said by Mr. Justice Moody in Telephone Co. v. Los Angeles, 211 U. S. 274, 29 Sup. Ct. 52, 53 L. Ed. 176, "no case, unless it is identical in its facts, may serve as a controlling precedent for another." It is enough that the authorities are agreed that the right to reasonably regulate rates to be charged by public service corporations is a governmental power, continuing in its nature, and, while it may be suspended in a given case by a contract for a definite time, not grossly unreasonable in point of time (Detroit v. St. Ry., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592; Vicksburg v. Waterworks, 206 U. S. 496, 27 Sup. Ct. 762, 51 L. Ed. 1155; Los Angeles v. Water Co., 177 U. S. 558, 20 Sup. Ct. 736, 44 L. Ed. 886; Minneapolis v. St. Ry., 215 U. S. 417, 30 Sup. Ct. 118, 54 L. Ed. 259; Cleveland v. St. Ry., 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102; Walla Walla v. Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341), it can only be done by words of positive grant or language equivalent thereto, and then only by the supreme legislative body of the state, unless the authority to do so is clearly delegated by it to some governmental subdivision.

"The general powers of a municipality or of any other political subdivision of the state are not sufficient. Specific authority for the purpose is required. This proposition," says the court, in Telephone Co. v. Los Angeles, supra, "is sustained by all the decisions of this court."

It is further said in that case:

"For the very reason that such a contract has the effect of extinguishing pro tanto an undoubted power of government, both its existence and the authority to make it must clearly and unmistakably appear, and all doubts must be resolved in favor of the continuance of the power"—citing a large number of cases.

It was consequently held that authority to a municipality to grant a franchise to the highest bidder after public advertisement, stating the character, terms, and conditions of the franchise, "to erect or lay telephone wires * * * upon any public street or highway," and "to regulate telephone service and the use of telephones, * * * to fix and determine the charges for telephones and telephone service and connections," conferred ample authority to exercise the governmental power of regulating charges, but not "authority to enter into a contract to abandon the governmental power itself," notwithstanding a franchise so sold by the city provided that the charge for services should not exceed specified amounts. All the leading decisions bearing on this subject are so thoroughly and carefully reviewed and the distinctions between them pointed out by Mr. Justice Moody in the case just referred to that it is unnecessary to prolong this opinion by reference to them.

[3] The concrete question before us is whether the city of Portland had authority by its charter, at the time ordinance No. 19176 was adopted, to contract with a public service corporation as to the fares such corporation might charge and collect during the life of the franchise, so as to deprive itself or the state from exercising during that time the governmental power of rate regulation. Our attention has been called to no express authority to do so. The position of the

complainant is that such authority is to be found in the general power to grant franchises for the use of the streets, and in section 112 of the charter, declaring that every franchise so granted shall fix the maximum rates to be charged during the lifetime thereof. Neither of these provisions contain any express authority to the city to contract away the important governmental power of regulating rates. Authority given a city to grant franchises for the use of its streets may impliedly confer the power to provide therein, as a condition to the exercise of the grant, the rates which it may be lawful for the grantee to charge and collect (Boerth v. Detroit City Gas Co., 152 Mich. 654, 116 N. W. 628, 18 L. R. A. [N. S.] 1197); but it does not authorize the city to barter or contract away the governmental power of thereafter changing such rates if the altered conditions of the country require (Water Co. v. Freeport, 180 U. S. 587, 21 Sup. Ct. 493, 45 L. Ed. 679; Ga. R. & Banking Co. v. Smith, 128 U. S. 174, 9 Sup. Ct. 47, 32 L. Ed. 377; Telephone v. Los Angeles, supra).

In the Freeport Case the city council or board had authority to provide for a supply of water "by the construction and regulation of wells, pumps, cisterns, reservoirs or waterworks, and to borrow money therefor, and to authorize any person or private corporation to construct and maintain the same at such rates as may be fixed by ordinance, and for a period not exceeding thirty years." Under such authority by ordinance the city granted to one Shelton or his assigns the exclusive right and privilege for the period of 30 years to supply the city and its inhabitants with water, providing therein the rates which the company might charge the city and consumers, and declaring that such ordinance should become a binding contract between the city and Shelton upon his filing an acceptance thereof, and thereafter it should not be altered, amended, or changed in any way without the consent of both parties. Shelton filed his acceptance of the terms and conditions of the ordinance. The city subsequently reduced the rates to be charged by the grantee, and its order was sustained by the Supreme Court on the ground that it had no authority to make an irrevocable contract fixing water rates for the life of the franchise, because such a power was not indispensable to the exercise of the other powers granted. The authority of the city in this case was, it seems to us, fully as complete as can be claimed for the authority of the city of Portland. Moreover, it is expressly declared in the section of the charter of the city of Portland authorizing it to grant, for a limited time, franchises or rights to the use of its streets by public service corporations that:

"At all times the power and right reasonably to regulate in the public interest the exercise of the franchise or right so granted shall remain and be vested in the council and said power and right cannot be divested or granted."

And this provision is carried into the complainant's franchise by express words. Here is a positive provision of the charter and franchise that the right to reasonably regulate in the public interest the exercise of the rights granted cannot be and was not granted away. The word "regulate" is a broad term. It is the word used in the Constitution of the United States to define the powers of Congress over

interstate commerce, and it is hardly necessary to cite authorities to show that under such power Congress has the right to regulate the charges or rates for the transportation of freight or passengers by interstate carriers. Section 112 of the charter does not in terms or by necessary implication authorize or empower the city to enter into an irrevocable contract with the grantee of a franchise fixing the rates of fares which may be charged by such grantee. Such a contract is not indispensable or necessary to the exercise of the other powers granted. Moreover, the section must, we think, be read in connection with the other provision in the charter reserving to the city the right and power at all times to reasonably regulate in the public interest the exercise of a franchise granted by it. It is in the nature of a command from the supreme legislative power of the state to the city that it shall, in granting franchises which provide for a charge of fares, insert a provision fixing the maximum charges which the grantee or its assigns may charge or collect for services rendered during the lifetime of the franchise. It is a limitation rather than the grant of a power to contract or barter away the governmental right of regulating fares (Home Telephone & Telegraph Co. v. Los Angeles [C. C.] 155 Fed. 554–573), and the fact that no provision was entered in the franchise reserving to the city the right to change the rate cannot affect its power to do so.

We conclude that the city had no authority at the time of the adoption of ordinance No. 19176 to contract away the right of regulating the fares to be charged by the grantee when the public interest required, and therefore the ordinance complained of is not void as impairing the obligations of a contract.

[4] This brings us to the question whether, if enforced, it will deprive the complainant of a vested right. The grant by a municipality of authority or permission to use the streets of the city for a reasonable period of time for street railway purposes, and to lay down tracks thereon and operate cars thereover, becomes,· when accepted by the grantee and the railway built, a contract right to use the streets for the purposes stated during the life of the franchise which neither the state nor any of its agencies is at liberty to impair. City Ry. v. Citizens' R., 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114; Vicksburg v. Waterworks, 202 U. S. 453, 26 Sup. Ct. 660, 50 L. Ed. 1102, 6 Ann. Cas. 253; Walla Walla v. Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; New Orleans Gas v. La. Lt. Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516.

[5] The franchises of the complainant and their acceptance conferred upon the grantees vested rights during the terms of the franchises which cannot be revoked without the consent of the owner unless upon grounds stated therein, and a municipal ordinance passed under color of legislative authority, which impairs the rights so granted, or which attempts to take the property of the complainant without due process of law, comes within the protection of the federal Constitution, and in such case the federal courts may be applied to for relief without waiting until proceedings are instituted by the city to enforce such ordinance. Waterworks v. Vicksburg,

185 U. S. 65, 22 Sup. Ct. 585, 46 L. Ed. 808; Willcox v. Cons. Gas., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, 15 Ann. Cas. 1034. The city may take measures to regulate the manner in which the complainant may enjoy its franchise, but such regulations must not be arbitrary or capricious, and must be reasonable and not destroy or unlawfully impair the rights granted. It cannot, under the guise of regulation, deprive the company of its franchise; nor can it forfeit such franchise or cancel the same except in the manner provided by law for taking private property for public use unless for some ground of forfeiture stipulated in the franchise itself. It has therefore been held that an ordinance of a city attempting to declare a forfeiture of a franchise as a punishment for a violation of some municipal regulation is a threatened violation of the constitutional rights of the grantee and the impairment of the obligations of a contract which a federal court has jurisdiction to restrain. Iron Mt. Co. v. Memphis, 96 Fed. 113, 37 C. C. A. 410.

[6] Now an examination of the ordinance in question discloses that it provides in effect that, upon the refusal of the company to comply therewith for a period of one month, the city council may, in its discretion, as a punishment therefor, revoke the franchise of the complainant and remove its tracks from the street. This it may do without an opportunity to the company to be heard. The ordinance does not provide that upon a legal conviction for a violation thereof the franchise shall be forfeited as a result of such conviction, but that, in lieu of the other penalties provided, the council may, in its discretion, declare the franchise forfeited and virtually destroy and render worthless the property of the complainant, and this without a judicial hearing or any kind of a hearing.

It is argued that the provisions of the ordinance for the forfeiture of the franchise in case of a violation thereof may be void and the remainder of the ordinance valid. It is quite true that the same statute may be in part constitutional and in part unconstitutional where the several provisions are so clearly separable that one may stand and the other be rejected. This rule is sometimes applied to the penalties provided where it is not unreasonable to believe that the lawmaking power would have adopted the statute without the penalty. Reagan v. Farmers' Loan & Trust, 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Berea College v. Ky., 211 U. S. 45, 29 Sup. Ct. 33, 53 L. Ed. 81; Flint v. Stone Tracy Co., 220 U. S. 108, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. But where the several provisions of a statute are "so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other as to warrant a belief that the Legislature intended them as a whole, and that if all could not be carried into effect, the Legislature would not pass the residue independently, and some parts are unconstitutional, all the conditions which are thus dependent, conditional, or connected must fall with them." Warren v. Mayor of Charleston, 2 Gray (Mass.) 84, quoted approvingly in Allen v. La., 103 U. S. 84, 26 L. Ed. 318. There is no ground for supposing or believing that the city would have passed the ordinance of August 14,

1912, fixing the fares to be charged by the complainant company without the penalties provided therein for its violation. The several penalties are an essential part of the ordinance, and we know of no rule of law which would justify the court in undertaking to separate the penalties and declaring that a part were valid and the others invalid. The several penalties provided and the object to be attained by the ordinance itself are so essentially and inseparably connected that one, cannot operate or be effectual without the other. The ordinance would be of no value whatever without the penalties. It is therefore void because it is an attempt to deprive the complainant of a vested right without just compensation or due process of law.

There are other objections to the ordinance which are deserving of notice, and they are that it is unreasonable, arbitrary, impracticable, and impossible of enforcement and is void because, if enforced, it would compel the complainant to discriminate between its passengers. That it is indefinite, uncertain, and open to various constructions is apparent from even a most cursory examination of it. It is not a simple no-seat no-fare ordinance. It does not prohibit the street car company from collecting more than a three-cent fare from passengers for whom it does not furnish seats, nor is it a regulation requiring the company to operate cars sufficient to provide each passenger with a seat. Indeed, it cannot be complied with by furnishing cars. Regardless of the number of cars provided by the company or its operating schedule, it is compelled by the ordinance to receive passengers to the extent of the standing room in a car, and many persons would, no doubt, insist on such right even if a sufficient number of cars were at hand to furnish each with a seat, thus leading to controversies and disputes between the agents of the complainant and the general public, and perhaps breaches of the peace. The ordinance is applicable to individual cars only. It requires the company to accept and receive passengers to the extent of the standing room in a car and to collect a fare of only three cents for each passenger in excess of the defined seating capacity, regardless of the number of cars operated by it or the seating facilities in other cars. The company is required to place above the entrance of every car words and figures indicating its seating capacity, which is defined by the ordinance as "two feet for each passenger," without specifying whether it is cubic feet of contents, square feet of floor space, or lineal feet of seat provided. If it be assumed that the latter was intended, the complainant company would necessarily be compelled in many instances to discriminate between passengers because many cars operated by it have cross-seats with three feet four inches lineal surface, sufficient to accommodate two persons; but it could not charge more than three cents for each passenger in excess of the aggregate lineal feet of seating capacity, estimating two feet for each passenger, although they might be provided with seats and the same accommodations as passengers paying full fare. The language is thus so involved and uncertain as to give rise to honest difference of opinion as to what was actually intended, and yet, if the company or its employés should misinterpret it and refuse for one month to obey

201 F.—9

the ordinance as subsequently interpreted by the courts, its franchise could be revoked, its property destroyed, and the large sums of money invested therein by its stockholders and bondholders be entirely lost. It would therefore seem to be void because it subjects the complainant to ruinous penalties if it should exercise its rights to test the validity thereof in the court and should be unsuccessful. Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Cons. Gas v. Mayer (C. C.) 146 Fed. 150; Ex parte Wood (C. C.) 155 Fed. 190.

Again, the ordinance says that the conductor or other person in charge of the car shall ring up in plain sight of the occupants the number of fares received, and, when the number of fares (manifestly so rung up) equals the seating capacity of the car as defined in the ordinance, the conductor or person in charge is prohibited from charging or receiving more than three cents for each passenger admitted for a full fare ride, without any provision as to when the register may be changed or a recount of passengers commenced, or whether this regulation is applicable to a single trip of the car or some other definite run. If we assume that the ordinance contemplates that the register shall be changed at the end of each trip, as is probably the practice of the company, it would follow that, if a car should leave one of its terminals with the defined seating capacity occupied, all persons boarding it thereafter would be required to pay a three-cent fare only, although a sufficient number of passengers may have alighted in the meantime at some transfer point or other place to leave ample and abundant room for such persons to obtain seats immediately upon entering the car, or, if the register of fares received during the trip should exceed the seating capacity of the car, the same result would follow, although as a matter of fact it may have received and discharged passengers at intermediate points so that at no time the passengers on the car would equal its seating capacity. Thus the company would be compelled by law to discriminate between passengers, although the accommodations were the same. Furthermore, the company is required by the ordinance to receive passengers to the extent of the standing room of the car notwithstanding it may provide a sufficient number of cars to afford seats for all. Thus if there are two or more cars en train, and there are more passengers than the defined seating capacity of one, but not enough to exceed the standing room therein, the operators are obliged to receive the excess passengers for a three-cent fare, although the other cars may be entirely empty.

It is said that, because the ordinance makes it unlawful for any street car company to accept or receive any greater sum than three cents for any person admitted to the car in excess of its seating capacity, it only prohibits the company from charging more than three cents to a passenger for whom it does not furnish a seat; but the difficulty is that the ordinance provides a standard for determining when the seating capacity of the car is exceeded, and that is when the fare register so indicates, regardless of the number of persons actually in the car at any one time.

We are not attempting to definitely construe the ordinance, for we conceive that to be practically impossible in view of its language, but to point out some of the glaring defects, and to show how unreasonable it is to make the violation of such a law a ground of forfeiture of a valuable vested right acquired by the company under its franchise, and that it requires the complainant to discriminate between passengers for whom it furnishes like services in violation of that part of the federal Constitution which forbids the taking of private property without due process of law and requires the equal protection of the laws. Lake Shore & Mich. Sthrn. Ry. v. Smith, 173 U. S. 684, 19 Sup. Ct. 565, 43 L. Ed. 858.

A preliminary injunction will issue.